UNITED STATES, Appellee

v.

EDMOND H. CLOUTIER, Private First Class,
U. S. Army, Appellant

2 USCMA 244, 8 CMR 44

No. 662

Decided February 27, 1953

Robert R. Afflick, Esq., for Appellant.
LT. COL. Thayer Chapman, U. S. Army, for Appellee.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

On September 4, 1951, appellant

Cloutier and another were convicted by general court-martial sitting in

Tokyo, Japan, under a specification alleging that they did "by force and violence and putting him in fear, feloniously steal from the person of Toshikazu Naito, against his will, about three thousand six hundred yen (¥3,600.00), of a value of about ten dollars ($10.00), the property of Toshikazu Naito," in violation of Article of War 93, 10 USC § 1565.[1] The convictions were approved by the convening authority and affirmed by a board of review. Only appellant Cloutier has appealed. This Court granted his petition for review on June 2, 1952, limited to the following issue:

"Whether the record of trial fairly required the law officer to instruct the court on the elements of lesser included offenses."

We have dealt with the problem of instructions on lesser included offenses in numerous cases, and have announced that the touchstone for determining the necessity for such instructions is to be found in the evidence adduced at the trial—that is, whether "there is a reasonable basis in the evidence from which it can be inferred that the lesser crime was committed." United States v. Williams (No. 251), 2 CMR 137, decided March 14, 1952; United States v. Roman (No. 191), 2 CMR 150, decided March 19, 1952; United States v. Banks (No. 382), 4 CMR 71, decided July 24, 1952; United States v. Stout (No. 497), 5 CMR 67, decided August 27, 1952. We turn therefore to the evidence reflected in the record of trial in the instant case.

There is no dispute concerning a substantial segment of the operative facts. Appellant and his co-accused, accompanied by two Japanese prostitutes, were passengers in a taxicab operated by the victim of the alleged robbery, Toshikazu Naito. After the taxi reached its destination an altercation between appellant and the driver ensued, and appellant struck the latter several times with his fists. During the struggle, the driver's arms hit the horn and the soldiers jumped from the

[1] Following pleas of guilty, both accused persons were also found guilty of AWOL.

taxi and ran away. The driver went to the police after receiving emergency treatment for his bruises.

The point of testimonial difference has to do with the reason for the beating of the taxi driver. Appellant testified that when the trip ended the driver demanded an exorbitant fare. Unwilling to pay the amount requested, he threw a lesser sum to the operator of the vehicle and proceeded to leave the cab. At this point—appellant's testimony continues—the driver forcibly seized his right arm, which had been injured in Korean combat, and had not yet healed. The driver's grasp was extremely painful, and appellant by way of uncontrollable reflex, struck him several times to break his hold. This testimony was corroborated in substance by that of the co-accused. The driver, on the other hand, related a markedly different version. He testified that when he halted the cab, he was seized from the rear by appellant's companion and thereafter struck by appellant several times. Both men, he said, demanded that he surrender his money—and, in fear of further beating, he gave them ¥3,600, about $10.00. Almost immediately thereafter he reported the incident to the police. One of the prostitutes, called as a witness, testified that prior to the affray she had heard one of the accused say "something . . . like hitting or striking, or something like that." She testified on this subject in English, although the remainder of her testimony was presented through an interpreter. It was quite evident from her attempt to testify in English that, at best, she had only a rudimentary knowledge of the language.

The Government argues that there were no reasonable alternatives to the offense charged—that is, that the accused was either guilty of the offense charged or not guilty. With this we cannot agree. Prosecution and defense witnesses alike agree that the taxicab driver was beaten up by the accused. The accused admitted striking the taxicab driver—claiming that he did so in order to break the driver's hold on his sore arm. The driver testified that he was beaten "all over the body." Evidence was adduced showing that the

driver received emergency treatment after the incident for pains in his eye and head. It is true, as argued by the Government, that if appellant used only the force necessary to repel the alleged assault by the driver, he would be guilty of no crime. However, the testimony of the Government witnesses as well as that of the accused indicates that greater force may well have been used than was necessary to repel the acts of an aggressor. At the least, this raised a question of fact for the court to determine. The use of excessive force would make the accused guilty of an assault and battery. This evidence, coupled with the flat denial of the accused that any money was taken from the driver, reasonably raises as an issue in the case the possibility of a finding of guilty of the lesser offense of assault and battery. In our opinion, the court should have been instructed on the elements of this offense and the failure to do so constitutes prejudicial error.

The decision of the board of review is reversed and a rehearing is ordered.

Judge LATIMER, concurs.

BROSMAN, Judge (dissenting):

The majority has chosen to rule that, under the facts of the case at bar, the law officer erred in failing to instruct on the elements of the lesser offense of simple assault. I do not at all agree that any such instruction was required by the evidence contained in the record of trial in this case. Of course, I have no quarrel whatever with my brothers' law in this respect. However, I disagree so vehemently with their interpretation of the facts that I am constrained to file this memorandum of dissent.

At its foundation, the majority opinion takes the position that because the victim of the alleged robbery testified that accused struck him "all over the body," there was a possibility that, if accused had not been engaged in robbery, he had used more force than was reasonably necessary to break the driver's painful grasp on his wounded arm—suggested as the reason for the striking. This conclusion is—I submit —based on a distorted version of the true facts contained in the record. I

take issue with the majority's unamplified representation that the victim received "emergency treatment." What actually happened was that he was "treated" at a corner drugstore. For an account of the nature and extent of the driver's injuries, I prefer to take the testimony of the doctor who examined him at the instance of the military authorities only a little later, and who testified as follows:

"Q. At the time you first saw him was he bandaged in any way?
"A. He was not.
"Q. Was he injured in any way?
"A. His left eye was hit and was swollen, and the left side of his neck had a streak of blood clot under the skin, not above the skin.
"Q. Did these injuries appear to you to be serious?
"A. I thought it was light. Well, I would say it was light.
"Q. Would you say that he needed medical attention at the time you saw him?
"A. As far as a doctor's treatment is concerned, I don't think it was necessary; just a bandage to cool his eye; I thought that was enough."

At another point in his testimony, the doctor stated flatly that he was unable to find any bruises on the driver's body. I have concluded from my own examination of the record, that the accused's victim was very slightly injured indeed. He had suffered no more than a lightly bruised jaw and what is popularly referred to as a "black eye."

In truth, however, the extent of the driver's injuries is not of itself the proper test—for the reason that the degree of force the accused would be justified in using to resist must be related directly to the tenacity of his aggressor. In this case, the accused testified that he struck the taxi driver to break the painful grasp of the latter on his injured arm. I should suppose that the practical and proper test here would be whether the accused, using only his hands, continued to beat the driver *after* he had succeeded in breaking his hold. I certainly take it as conceded that so long as the driver maintained his unauthorized grip, the ac-

246

cused would have warrant to thrust at and to strike him in an attempt to break that hold. There is *no evidence whatsoever* in the record of this case even remotely suggesting that the accused continued to beat the driver after succeeding in dislodging the latter's grasp on his arm. Moreover, the trifling character of the injuries inflicted argues that the force used theretofore was not at all excessive. Therefore, I believe that an instruction as to the elements of the lesser offense of simple assault was not necessary in this case, because I perceive no basis for saying that that lesser offense was reasonably raised as an alternative to that charged.

Apart from the suggestion that Cloutier might have been guilty of simple assault through resisting the grasp of the driver with more than necessary force, an alternative theory of possible guilt of this lesser offense seems also somehow to have entered the minds of my colleagues. This theory —as I understand it—is that the law officer should have recognized that the court might disbelieve the driver's testimony with respect to the robbery, while believing him in so far as he spoke of a mere beating. Joining this with a further portion of accused's version—namely, that he and his companion had thought the driver overcharged them—the ultimate hypothesis is developed that accused battered the driver because he had overcharged them. I had thought the fallacy of this reasoning to be self-evident, but it appears now that I must spell out my views in greater detail.

We have reiterated time and again— and in case after case—that the law officer is required to instruct on lesser offenses *reasonably* raised by the evidence as alternatives to the offense charged. I had never suspected heretofore that the term "reasonably raised alternative" was synonymous with "every remotely conceivable alternative." This suggestion is to me especially shocking in light of our specific admonition in United States v. Roman (No 191), 2 CMR 150, decided March 19, 1952, that unnecessary instructions concerning lesser offenses should be avoided for the reason that they tend only to mislead the court. Assuming that the court concluded that the driver lied about the robbery, I would have serious doubts of the value of his other testimony—perhaps even as to whether it possessed sufficient credibility to provide the basis for a conviction of anything. Although a witness may be disbelieved in *minor* particulars, when disbelief goes to the very *heart* of his testimony, we have a quite different problem. His usefulness as a witness is—or should be—completely dissipated —in the absence, of course, of strong corroborative evidence as to remaining particulars.

At first blush the approach under discussion might appear beneficial to accused persons—certainly it might seem to work to the benefit of the present accused. However, I submit that such a course opens to courts-martial far too many attenuated alternatives, making compromise findings of guilt dangerously possible in cases which otherwise would almost certainly result in acquittal. When the Government undertakes a prosecution, it should be restricted to the theory of the offense charged, or to those of lesser offenses reasonably—and I do mean *reasonably* —raised by the evidence as alternatives. Otherwise the possibility of varying theories of guilt may be so increased that the risk of acquittal in an entirely proper case is seriously impaired. As an example, I submit that in virtually any set of facts, sufficient to serve as the basis for a charge of premeditated murder, differing versions of the facts may be conjured imaginatively which would operate to raise every lesser crime from unpremeditated murder, through both voluntary and involuntary manslaughter, and down to and including simple assault. Those advocating the theory I am here questioning will disclaim any such intention—and, of course, this is quite true. However, some such result will follow almost certainly unless "reasonably raised" is confined to its proper orbit.

In conclusion, I must repeat that the requirement of instructions on simple assault in this case contravenes our ad-

**247**

monition in United States v. Roman, supra, that:

"In dealing with the necessity of giving instruction on included offenses it must be borne in mind that the law officer makes the preliminary decision and if there is no testimony to reduce the offense below the degree charged there is no obligation to give any instructions. *To do so tends to mislead the court. . . .*" [Emphasis supplied]

My brethren appear not to be so concerned over the danger of misleading the court-martial as I. I would affirm the board of review's decision.