UNITED STATES, Appellant,

v.

Mikeal J. REMAI, Sergeant, U.S. Army, Appellee.

No. 47,350.

SPCM 18280.

U.S. Court of Military Appeals.

Feb. 19, 1985.

For Appellant: *Captain Edmund S. Bloom, Jr.,* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Edwin D. Selby* (on brief).

For Appellee: *Captain Edmond R. McCarthy, Jr.* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Daniel N. Velling* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Major Patrick M. Flachs.*

OPINION OF THE COURT

EVERETT, Chief Judge:

Remai was convicted of six offenses involving marihuana [1] and was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and reduction to pay grade E-1. The convening authority approved the findings and sentence; but then the Court of Military Review set them aside. Its unanimous opinion explained:

The evidence establishes that the appellant was apprehended by military police authorities upon the completion of a joint military-civilian operation concerning drug trafficking in the Fort Irwin-Barstow, California area. Advised of his rights to remain silent and to an attorney, the appellant refused to waive them and requested the presence of an attorney. No further action was taken by military authorities at that time except to turn the appellant over to the San Bernardino Sheriff's Department. Not knowing of the appellant's previous request, a deputy sheriff, after a new rights advisement, obtained a confession from the appellant that was admitted after the appellant's motion to suppress was denied. We agree with the appellant that he was denied his right to an attorney and we hold that his confession to the deputy sheriff was inadmissible. Although not brought to our attention by the appellant the erroneous admission at a court-martial of a pretrial confession requires reversal notwithstanding overwhelming independent evidence of guilt. *United States v. Hall,* 1 M.J. 162 (CMA 1975); *United States v. Kaiser,* 19 USCMA 104, 41 CMR 104 (1969); *United States v. Thomas,* 10 M.J. 687 (ACMR 1981); *United States v. Johnstone,* 5 M.J. 744 (AFCMR 1978); *see United States v. Lewis,* 9 M.J. 936 (NCMR 1980); *but see Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

Unpublished opinion at 1–2.

After the Government's motion for reconsideration had been denied over Chief

1. In violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.

Judge Hansen's dissent, The Judge Advocate General of the Army certified this issue:

WHETHER THE UNITED STATES [ARMY] COURT OF MILITARY REVIEW ERRED, AFTER FINDING A VIOLATION OF THE ACCUSED'S FIFTH AMENDMENT RIGHTS PER *EDWARDS v. ARIZONA*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), IN APPLYING AN AUTOMATIC REVERSAL RULE, RATHER THAN DETERMINING IF THE ERROR WAS HARMLESS BEYOND A REASONABLE DOUBT, *SEE CHAPMAN v. CALIFORNIA*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), WHEN THE ARMY COURT ALSO FOUND OVERWHELMING INDEPENDENT EVIDENCE OF GUILT.

We conclude that, although the Court of Military Review correctly applied the precedents of this Court, the authority of those precedents has been eroded by the decisions of the United States Supreme Court. Therefore, we must answer the certified question in the affirmative.

I

A

Early in its history this Court held that the erroneous admission of statements obtained from an accused without the requisite statutory warning of his rights required reversal of the convictions that had been obtained in reliance thereon. *United States v. Wilson*, 2 U.S.C.M.A. 248, 8 C.M.R. 48 (1953). Writing for the majority, Judge Brosman noted that there had been

an abridgement of the policy underlying ... [Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b) ] which must—we think—be regarded as "so overwhelmingly important in the scheme of military justice as to elevate it to the level of a 'creative and indwelling principle.' " [Citation omitted.] To put the matter otherwise, we must and do regard a departure from the clear mandate of the

Article as *generally and inherently prejudicial.*

*Id.* at 255, 8 C.M.R. at 55 (emphasis added).

In *United States v. Kaiser*, 19 U.S.C.M.A. 104, 41 C.M.R. 104 (1969), the accused made a verbal pretrial admission to the Dallas, Texas, police, who had failed to comply with the warning requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In reversing the decision of the then Board of Review, this Court emphasized that

[w]here a constitutional error of this magnitude is present, we will not speculate on the impact it might have had on the court's determination of guilt. Cf. *Chapman v. California*, 386 US 18, 17 L Ed 2d 705, 87 S Ct 824 (1967).

This Court has consistently applied the rule that utilization of an accused's pretrial statement, without proof of compliance with the warning requirements, requires reversal as to those offenses to which the statement relates, regardless of the compelling nature of the other evidence of guilt. *United States v. Wilson*, 2 USCMA 248, 8 CMR 48; *United States v. Tanner*, 14 USCMA 447, 34 CMR 227; *United States v. Reynolds*, 16 USCMA 403, 37 CMR 23. Even a judicial confession of guilt is insufficient to overcome the prejudicial effect of the use of an inadmissible statement, unless the Government affirmatively demonstrates, on the record, that its illegal action did not induce the accused's testimony. *United States v. Bearchild*, 17 USCMA 598, 38 CMR 396; *Harrison v. United States*, 392 US 219, 20 L Ed 2d 1047, 88 S Ct 2008 (1968).

*Id.* at 106, 41 C.M.R. at 106.

In *United States v. Hall*, 1 M.J. 162 (C.M.A. 1975), the Court refused to retreat from this position. Despite "considerable independent evidence of guilt," it reversed the conviction because the court-martial had considered a pretrial statement of the accused which had been obtained without advising him of his right to counsel during the interrogation. The Opinion of the Court pointed out:

Earlier, this Court noted that under military law the Government's use at trial of an incriminatory statement by the accused that was improperly obtained from him before trial requires reversal of findings of guilty "infected" by the error "regardless of the compelling nature of the other evidence of guilt." *United States v. Kaiser*, 19 U.S.C.M.A. 104, 106–107, 41 C.M.R. 104, 106–107 (1969). 1 M.J. at 163.

## B

Meanwhile, the Supreme Court has been traveling a quite different path. In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the prosecutor had violated the defendant's fifth-amendment rights by adversely commenting upon his failure to testify. In an opinion by Justice Black, the Court recognized that at least some constitutional errors can be held harmless, the test being whether the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. However, the Court acknowledged that its "prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error."[2] *Id.* at 23, 87 S.Ct. at 827–28.

In *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972)—which government appellate counsel unsuccessfully cited in *United States v. Hall, supra* —the Supreme Court, over strong dissent, rejected the defendant's collateral attack on his conviction, even though the prosecution had used a pretrial statement that might have been obtained in violation of his sixth-amendment rights.[3] The conviction was upheld because, even if "the challenged testimony should have been excluded, the record clearly reveals that any error in its admission was harmless beyond a reasonable doubt." *Id.* at 372, 92 S.Ct. at 2175.

In *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Supreme Court made clear its disapproval of any hesitancy on the part of appellate tribunals in applying the doctrine of constitutional harmless error. The conviction of the defendants had been reversed by the Court of Appeals because the prosecutor had made argument to the jury which the appellate court construed to be an impermissible comment on the defendant's failure to take the stand. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The *per curiam* opinion of the Court of Appeals had focused "on the failure generally of prosecutors within its jurisdiction to heed the court's prior admonitions about commenting on a defendant's failure to rebut the prosecution's case"; and to the Supreme Court it appeared that the appellate "court acted in this case to discipline the prosecutor—and warn other prosecutors—for what it perceived to be continuing violations of *Griffin* and § 3481." Proceeding "on the assumption that, without so stating, the court was exercising its supervisory powers to discipline the prosecutors of its jurisdiction," the Supreme Court held that the harmless-error rule of *Chapman* nonetheless applied. *Id.* 103 S.Ct. at 1978. Rebuking the Court of Appeals for exercising its supervisory authority "in a vacuum," the Supreme Court noted that the court below had "failed ... to give appropriate ... weight to" the relevant interest of the victims of crime and to "the practical problems of" a retrial.

The conclusion is inescapable that the Court of Appeals focused exclusively on

---

2. The Court's footnote for this proposition is as follows:

8. See, e.g., *Payne v. State of Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (coerced confession); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel); *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (impartial judge).

3. A police officer had been given "the special detail of posing as a prisoner and sharing" the accused's "cell in order to 'seek information' from him." 407 U.S. 371, 375, 92 S.Ct. 2174, 2177, 33 L.Ed.2d 1 (1972). *Cf. United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

its concern that the prosecutors within its jurisdiction were indifferent to the frequent admonitions of the court. The court appears to have decided to deter future similar comments by the drastic step of reversal of these convictions. But the interests preserved by the doctrine of harmless error cannot be so lightly and casually ignored in order to chastise what the court viewed as prosecutorial overreaching.

*Id.* 103 S.Ct. at 1979.

The Court observed that *Chapman v. California, supra,* had "rejected a *per se* rule" requiring automatic reversal because of prosecutorial comment on the defendant's failure to testify.[4] This rejection was attributed to recognition "that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." Likewise, "*Chapman* reflected the concern, later noted by Chief Justice Roger Traynor, that when courts fashion rules whose violations mandate automatic reversals, they 'retreat[ ] from their responsibilities, becoming instead "impregnable citadels of technicality." ' " *Id.* at 1980. Continuing in the same vein, the Court explained:

> Since *Chapman,* the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations, [citations omitted]. The goal, as Chief Justice Traynor of the Supreme Court of California has noted, is "to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error." [Citation omitted.]

> Here, the Court of Appeals, while making passing reference to the harmless

error doctrine, did not apply it. Its analysis failed to strike the balance between disciplining the prosecutor on the one hand, and the interest in the prompt administration of justice and the interests of the victims on the other.

*Id.* at 1980–81 (footnote omitted).

## II

The Court of Military Review reversed Remai's conviction because the court-martial had considered the confession made to a San Bernardino deputy sheriff who was unaware of a request for counsel that Remai already had made to military authorities. However, it seems clear that automatic reversal would not have occurred if Remai had been convicted in a Federal District Court. According to the Supreme Court, "*Edwards* established a bright-line rule to safeguard pre-existing rights," *Solem v. Stumes,* ___ U.S. ___, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984); and it "created a protective umbrella serving to enhance a constitutional guarantee." *Id.* at 1342 n.4, quoting *Michigan v. Payne,* 412 U.S. 47, 54, 93 S.Ct. 1966, 1970, 36 L.Ed.2d 736 (1973).[5] *Edwards* is an offspring of *Miranda* ; and since the Supreme Court in *Milton v. Wainwright, supra,* held that failure to give the *Miranda* warning was subject to harmless-error treatment, it could hardly treat an *Edwards* violation differently.

Furthermore, to give harmless-error treatment for an *Edwards* violation conforms fully to other precedents concerning the effect of *Miranda* and *Edwards* infractions. For example, neither *Miranda* nor *Edwards* has been accorded fully retroactive effect. *See Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Solem v. Stumes, supra* ; but cases involving more fundamental rights— such as *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which established a fundamental right to

---

4. In a footnote the Court reminded us that *Chapman* had "acknowledged that certain errors may involve 'rights so basic to a fair trial that their infraction can never be treated as harmless error,' " 103 S.Ct. 1974, 1980 n.6 (1983); and it called attention to the three cases which had been cited for this proposition in *Chapman. See* n.2, *supra.*

5. For that very reason it was treated as nonretroactive.

counsel for indigent defendants—were held to be fully retroactive.[6] Statements obtained in violation of *Miranda* may be used to impeach a defendant when he testifies; but coerced confessions may not be. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Evidence resulting from a *Miranda* violation seems to be subject to less rigorous application of the fruit-of-the-poisonous-tree principle than an involuntary statement would be. *See Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

Since *Edwards* violations would be subject to harmless-error treatment for cases tried in Federal District Courts, how can this Court justify a different standard in cases tried by courts-martial? It would be especially hard to do so in the present case, where the deterrent effect on the police would be minimal because the infraction was by a civilian police official, rather than by military authorities. However, regardless of who committed the infraction, failure to apply in a court-martial the harmless-error test to *Miranda* and *Edwards* violations injures the same vital interests with which the Supreme Court was concerned in *United States v. Hasting, supra.* We perceive no reason why, by the failure to apply the harmless-error test, a convicted servicemember should receive a windfall not available to his civilian counterpart. Instead, the recent enactment of legislation which for the first time subjects courts-martial to direct review by the Supreme Court[7] tends to suggest a congressional intent that the same standards should be applied in the review of a court-martial conviction that would be employed in the review of a civil-court conviction.

In the military society there exist subtle pressures which do not exist in civilian society; and Article 31, 10 U.S.C. § 831 was intended to counteract these pressures. Undoubtedly, the Court had this in mind when in 1953 it first ruled that admis-

sion of statements obtained in violation of Article 31–warning requirements was generally prejudicial and would always require reversal. Perhaps, as far as harmless error is concerned, violations of Article 31 in the military society should be accorded the same treatment which the Supreme Court ultimately decides to give to coerced confessions, since, by enactment of Article 31, Congress established a fundamental norm of military justice. However, with respect to confessions obtained in violation of *Miranda* and *Edwards* requirements, we hold that the harmless-error test should be applied.

We observe that some difference of judicial opinion exists as to how the harmless-error standard should be applied. *Compare United States v. Alba,* 15 M.J. 573 (A.C.M.R. 1983), *with Harryman v. Estelle,* 616 F.2d 870 (5th Cir.) (en banc), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). Because neither the certified issue nor the briefs focus on this question, we express no view thereon at this time.

### III

By holding that the Court of Military Review erred in automatically reversing Remai's conviction,[8] we have answered the certified issue; and we voice no opinion as to whether admission of Remai's statement was harmless error in connection with his entrapment defense or otherwise. Instead, we simply will permit that court to initially consider whether reception of Remai's statement in evidence constituted harmless error in this case.

The decision of the United States Army Court of Military Review is reversed; the record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review.

Judge COX concurs.

Judge FLETCHER did not participate.

---

6. *Arsenault v. Massachusetts,* 393 U.S. 5, 6, 89 S.Ct. 35, 36, 21 L.Ed.2d 5 (1968).

7. *See* Military Justice Act of 1983, Pub.L. No. 98–209, § 10, 97 Stat. 1393, 1406, 10 U.S.C. § 867; Everett, *Some Observations on Appellate*

*Review of Court-Martial Convictions—Past, Present and Future,* 31 Fed. Bar News & Journal 420 (December 1984).

8. We emphasize again that while the court below erred, it properly relied on our precedents.