UNITED STATES

v.

**William A. MILLER Seaman Recruit,
U.S. Coast Guard.**

**CGCMS 23815
Docket No. 882.**

U.S. Coast Guard Court of
Military Review.

24 Sept. 1986.
Reaffirmed on Reconsideration 6 Feb. 1987.

Military Judge: CDR Larry S. Craig, USCG.

Trial Counsel: LCDR Robert G. Blythe, USCG.

Assistant Trial Counsel: LT Edward L. Ristaino, USCG.

Individual Military Counsel: LCDR Kenneth E. Gray, USCG.

Assistant Defense Counsel: LCDR J. Michael Crye, USCG.

Appellate Defense Counsel: LCDR Robert Bruce, USCG.

Appellate Government Counsel: LCDR Thomas J. Donlon, USCG.

DECISION

BAUM, Chief Judge:

Appellant, pursuant to his pleas of guilty, stands convicted by special court-martial of two specifications of unauthorized absence, for six days and four days respectively, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 and one specification of introduction of one half gram of cocaine onto a Coast Guard vessel with intent to distribute, one specification of marijuana use and one

specification of cocaine use, all in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Appellant, at his request, was tried by judge alone, who imposed a sentence of a bad conduct discharge and six months confinement. The convening authority approved only the bad conduct discharge pursuant to the terms of a pretrial agreement, after having deferred confinement earlier in accordance with appellant's request. Now, before this Court, appellant assigns two errors, one of which is disposed of by our holding in *U.S. v. Payne*, 22 M.J. 592 (C.G.C.M.R.1986). In that assignment appellant challenges the legality of the legal officer's post-trial recommendation as having been prepared and signed by an officer who was not a staff judge advocate or a legal officer as required by Article 60(d), Uniform Code of Military Justice, 10 U.S.C. § 860(d) and R.C.M. 1106, Manual for Courts-Martial, 1984, or the officer was improperly assigned as legal officer. As indicated, this Court's decision in *U.S. v. Payne, supra,* decided after this assignment of error was filed, resolves the issue adversely to the accused and, accordingly, the claimed error is rejected.

In his other assignment, appellant contends that the military judge improperly questioned the accused during the plea providence inquiry about matters not relating to the establishment of appellant's guilt or the voluntariness of his pleas, but, relating, instead, to the sentence that the judge would ultimately impose. Appellant also argues that the military judge became a partisan advocate for the prosecution by questioning appellant after his sworn statement in the sentencing phase of the trial and eliciting admissions from the appellant about uncharged offenses of use and distribution of drugs. Government counsel vigorously opposes this assigned error and, among other things, argues that because the rules of evidence are relaxed at sentencing and matters testified to on direct examination may be explored on cross-examination, the military judge could properly probe the extent of appellant's drug consumption as it became quite certain that appellant had used drugs on several other occasions.

█ It is true that the accused who gives sworn oral testimony at the sentencing stage of the proceeding, "shall be subject to cross-examination concerning it by the trial counsel or examination on it by the court-martial, or both," R.C.M. 1001(c)(2)(B), Manual for Courts-Martial, 1984. It is not true, however, that at this point in the trial the rules of evidence are relaxed with respect to cross examination by trial counsel or examination of the accused by the Court. Moreover, military judges must continue to exercise great care when they embark upon the development of evidence and the examination of witnesses, including questioning the accused who takes the stand before sentencing, whether the trial is with or without members. In *U.S. v. Shackelford*, 2 M.J. 17 (C.M.A. 1976), with citation to *U.S. v. Clower*, 23 U.S.C.M.A. 15, 48 C.M.R. 307 (1974), the Court of Military Appeals underscored the precariousness of taking on the role of witness examiner, analogizing the judge in such a situation to a tightrope walker who must tread carefully, "in assuring on the one hand that the jury is provided the information it needs while also scrupulously avoiding even the slightest appearance of partiality...." *U.S. v. Shackelford, supra,* at 19. Here, the judge was acting as jury since trial and sentencing were by judge alone. Even so, the requirement remains for impartiality and avoidance of the role of advocate. While it may be argued that the door was opened on direct examination to further probing of the accused as to the extent of his drug involvement in the Coast Guard, the judge's searching examination of appellant came close to taking on the appearance of adversarial cross-examination. Furthermore, it clearly exceeded the scope of direct examination when questions were posed concerning pre-service drug usage. That aspect of the judge's examination resulted in error that materially prejudiced the accused. The judge's challenged questions during the plea providence inquiry also pose a problem.

■ During the military judge's examination into the accused's guilty pleas, as required by R.C.M. 910, Manual for Courts-Martial, 1984 and prior case law, to establish their voluntariness and factual basis, the following colloquy occurred:

Q. Where did you get the cocaine?

A. I got it on Duvall Street here in Key West.

Q. From whom did you buy it?

A. There's people that sell it on the street. I got it from one of the street vendors, I guess you could say.

Q. Do you know which one?

A. Yes, Your Honor.

Q. To what extent have you agreed to cooperate with the government in identifying who it was?

A. I have not been approached by the government concerning that situation, Your Honor.

Q. Would you go down with the local police and identify him if you were taken ashore?

A. I would think about it seriously, Your Honor. I wouldn't want to put myself in a dangerous situation or anything that could arise from ... The situation with cocaine as it is now, I don't know what anyone's going to do if they think you're going to point the finger at them. I don't know what a person's going to do. I wouldn't want to put myself, if I didn't have to, in that situation. I'd just like to leave the cocaine behind and everything behind. Those people, everything. This person that I got it from, he's already been in jail and has gotten out recently.

Q. Is he in the military?

A. No, Your Honor.

MJ: This aspect has not been followed up by the government, I take it?

TC: Your Honor, I believe during the investigation that was conducted into some of these charges, a Coast Guard Intelligence agent did, after giving the accused his rights, provide him with the opportunity to make a statement. He

exercised his rights and remained silent at that point. I would anticipate that there may be some discussion after this trial is completed as to the possibility of information, but it does not have any direct involvement with the trial.

Q. Moving on to the third specification under Charge III—

IMC: Your Honor, if I might, while we're on that question?

MJ: Yes.

IMC: I understand your reasons for asking that particular question. Let me say from my point of view as my client's attorney that when and if we are approached by the government, as Miller's Defense Counsel I will ensure that every reasonable bit of assistance that we can give to the government will in fact be given. This is sort of a unique question. We hadn't really covered that when we talked to our client, so maybe it has caught him a little bit by surprise, but rest assured that I will discuss the situation with him, explain his rights and his obligations, and any protections that are necessary in cooperation with the government.

MJ: Thank you, counsel. I certainly sensed the surprise in the line of questioning. It is a common surprise. It also is a common line of questioning with me.

IMC: I will keep it in mind next time, Your Honor, thank you.

MJ: And it weighs very heavily in the question of sentence.[1]

We agree with appellate defense counsel, and as acknowledged by the judge himself, that exploration in this area was clearly for sentencing purposes. As such, we believe it exceeded the bounds for a guilty plea inquiry and thus, constituted error. We deem that error prejudicial to the accused because it forced him to either volunteer to cooperate with the government in identifying his drug supplier or suffer the consequences from the judge at sentencing. That the accused chose to cooperate, an-

1. Record of trial pages 12 and 13.

swering forthrightly in response to the judge's queries and also later in testimony prior to sentencing, does not ameliorate the prejudicial effect of this error because it adversely impinged on the critical constitutional right to remain silent. It is reasonable to assume that the very decision to testify on this subject was driven by the judge's improper questions. Accordingly, we find that forcing the accused to forego his right to silence in this area was error that materially prejudiced a substantial right.

In holding that the judge's examination with respect to identifying appellant's drug supplier was prejudicial error, we have not touched upon the defense assertion that "[i]t is highly improper, in sentencing deliberations, to consider matters based solely on information elicited from the accused by the military judge during the guilty plea inquiry. *United States v. Richardson,* 6 M.J. 654 (N.C.M.R.1978)." As we see it, that is not the issue here. There were no matters considered during sentencing that were based *solely* on information elicited during the plea providence inquiry. All matters considered appear to have been covered in the presentencing phase of the trial. Accordingly, we leave for decision to another day the question whether matters *properly* developed with respect to the pleas of guilty can be considered later by the judge as bearing on the sentence determination when the plea inquiry was the only source of this information. On the

facts of this case, we find prejudicial error stemming from the judge's impermissible questions at the pleading stage of the trial and his later examination concerning appellant's pre-service drug usage. Applying the standards of *U.S. v. Sales,* 22 M.J. 305 (C.M.A.1986), we will reassess the sentence in light of these errors rather than return the record for a rehearing.

Upon reassessment, we are convinced that the approved sentence of a bad conduct discharge "is no greater than that which would have been imposed if the prejudicial error had not been committed." *U.S. v. Suzuki,* 20 M.J. 248, 249 (C.M.A. 1985). *See also U.S. v. Breseman,* 21 M.J. 973 (C.G.C.M.R.1986). In fact, just as we found in *Breseman, supra,* for different offenses and an officer accused, nothing less than a punitive discharge would be appropriate for this appellant and the drug offenses of which he stands convicted. Accordingly, the findings and sentence as approved below are affirmed.

Judges BRIDGMAN, BURGESS and GRACE, concur.*

* Judge LYNN, did not participate in the decision in this case.