**UNITED STATES**

v.

**William A. MILLER, Seaman Recruit,**
**U.S. Coast Guard.**

**CGCMS 23815.**
**Docket No. 882.**

U.S. Coast Guard Court of
Military Review.

6 Feb. 1987.

Military Judge: CDR Larry S. Craig, USCG.

Trial Counsel: LCDR Robert G. Blythe, USCG.

Assistant Trial Counsel: LT Edward L. Ristaino, USCG.

Individual Military Counsel: LCDR Kenneth E. Gray, USCG.

Assistant Defense Counsel: LCDR J. Michael Crye, USCG.

Appellate Defense Counsel: LCDR Robert Bruce, USCG.

Appellate Government Counsel: LCDR Thomas J. Denlon, USCG.

## ON RECONSIDERATION OF THIS COURT'S DECISION OF 24 SEPTEMBER 1986

BAUM, Chief Judge:

On 10 October 1986, this Court granted appellant's motion for reconsideration of our decision of 24 September 1986 [1] in accordance with Rule 19 of the Courts of Military Review Rules of Practice and Procedure. After considering the latest briefs submitted and hearing oral argument, the earlier decision affirming the findings and sentence approved below is, upon further review, reaffirmed.

Appellant argues that, applying the proper standard from *U.S. v. Sales*, 22 M.J. 305 (C.M.A.1986) on reconsideration, we should find that a sentence including a bad conduct discharge does not render the judge's errors harmless beyond a reasonable doubt. Moreover, he urges that if we do not feel it is appropriate to change appellant's sentence to one not including a bad conduct discharge, we should set the sentence aside and authorize a rehearing. On the other hand, the Government contends that in light of *U.S. v. Remai*, 19 M.J. 229 (C.M.A. 1985), this Court's earlier reassessment of the sentence was not even required, despite our finding error of constitutional dimension, because that error was harmless beyond a reasonable doubt and, in any event, was waived by the defense's failure to object at trial. Government counsel points out that since *Remai, supra*, constitutional error is no longer to be equated with prejudicial error automatically requiring corrective action. The Government has accurately observed that the Court of Military Appeals, on the basis of Supreme Court opinions, departed in *Remai, supra*, from its earlier precedent of requiring automatic reversal for constitutional violations, without testing for prejudice. Both the Supreme Court and the Court of Military Appeals, however, appear to indicate that there are "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." [2] The error committed by the judge in this case may very well fall within those excepted infractions.

---

1. *U.S. v. Miller*, 23 M.J. 553, 556 (C.G.C.M.R. 1986)

2. *See, U.S. v. Remai*, at 231 where quoted portion of the majority opinion in *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) appears. *See also, U.S. v. Stubbs*, 23 M.J. 188 (C.M.A.1987) where Chief Judge Everett, in discussing Congress's general inclination away from a "per se" approach

through the Article 59, Uniform Code of Military Justice, 10 U.S.C. § 859, requirement that error materially prejudice the substantial rights of the accused, said: "This Court recognizes that there are unusual instances in which, under compelling circumstances, remedial action is appropriate without regard to an affirmative showing of prejudice."

■ In attempting to develop information at the pleading stage of the trial which would, in the judge's own words, "weigh heavily in the question of sentence," the judge clearly exceeded the bounds for a guilty plea inquiry. More importantly, by asking the accused if he would go with local police and identify his drug supplier, the judge invaded a constitutionally protected area.[3] The accused, in pleading guilty, waived his Fifth Amendment right to remain silent only to the extent necessary to establish his guilt and the providence of his plea. He did not agree to be a witness against himself in all other respects. The judge's explanation to appellant that by pleading guilty he gave up his right against self incrimination and would have to answer the judge's questions, (ROT 7 & 8), while correct, may have inadvertently led appellant to conclude that he was required to answer *all* the judge's questions. The judge said, "I am going to ask you about what happened that produced these charges, and in order for your plea of guilty to be accepted, you have to voluntarily choose, although you would not have to, to answer those questions." (ROT 8) This advice, which was a proper part of the dynamics of a guilty plea inquiry, may have resulted in the accused and, possibly even his counsel, thinking that it was nec-essary to respond to all judicial queries to ensure acceptance of the plea. Thus, the accused and counsel, because of the "element of officiality"[4] attending the questioning, may have been subtly coerced into answering the judge's improper questions and later expanding upon those answers, prompting our earlier conclusion that appellant was forced to forego his right to silence. We deem the judge's departure from the proper scope of the plea inquiry by asking the complained of questions for sentencing purposes to be so antithetical to basic trial requirements that it affected the integrity and fairness of the judicial process and, thus, constituted plain error. As a result, we will not invoke the doctrine of waiver from counsel's failure to object.[5]

■ If there are any exceptions to the current requirement to examine errors of constitutional proportion for resulting harm, as intimated in *Remai, supra,* and *Stubbs, supra,* we believe the violation here should be among those so exempted. In any event, even if we assess for prejudice, we are not assured that the constitutional error here was harmless beyond a reasonable doubt. The judge explicitly stated that the answer to his improper question would "weigh heavily" with respect to sentencing. He later imposed the maximum punishment in all aspects, save

---

3. *See, U.S. v. Sauer,* 15 M.J. 113 (C.M.A.1983) where it was held that compelling an accused to respond to inquiry by the military judge for sentencing purposes violated the accused's constitutional privilege against self-incrimination.

4. *See U.S. v. Wilson,* 2 U.S.C.M.A. 245, 8 C.M.R. 48 (1953) where Judge Brosman, in addressing a failure to accord an accused requisite Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 warnings, expressed thoughts relevant to the facts of this case He said:

"Where—as here—*an element of officiality attended the questioning* which produced the admissions, there is more than a violation of the naked rule of Article 31(b), *supra;* there is an abridgment of the policy underlying the Article which must—we think—be regarded as 'so overwhelmingly important in the scheme of military justice as to elevate it to the level of a "creative and indwelling principle".' *United States v. Lee* (No. 200), 2 CMR 118. To put the matter otherwise, we must and do regard a departure from the clear mandate of

the Article as generally and inherently prejudicial."
*Id.* at 255, 8 C.M.R. at 55. [Emphasis added]
These observations, in our view, should apply equally to the guilty plea inquiry, as set forth in *U.S. v. Care,* 15 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); its progeny; R.C.M. 910; the discussion accompanying that rule; and the Analysis in Appendix 21, Manual for Courts-Martial, 1984.

5. We also note that these questions would have been objectionable even at the sentencing stage unless the door was opened to this subject by the defense. The information sought by the judge could not properly be brought out by the prosecution as a matter in aggravation nor could the judge insist on its production for his sentencing purposes, without the accused first raising the subject. Accordingly, it was error for the judge to ask the accused about his willingness to identify the drug dealer at any time, but particularly egregious in the plea inquiry setting and, thus, constituted plain error at that stage.

forfeitures. Granted, the accused, in answering the judge, gave a reasonable explanation for not identifying his drug supplier without assurance of certain protective guarantees. The fact remains, however, that appellant did not unequivocally agree to such identification in response to the judge's query, or even later at the sentencing stage.[6] Accordingly, we cannot say we are convinced beyond a reasonable doubt that this exchange did not contribute in some way to the heavy sentence imposed by the judge. For all these reasons, we adhere to our earlier position that curative reassessment of the sentence as ultimately approved below is required in this case.

■ With respect to our prior action in this regard, appellant notes that the Court of Military Appeals in *Sales, supra,* stated, "if the error at trial was one of constitutional magnitude, then it would seem necessary that the Court of Military Review should be persuaded beyond a reasonable doubt that its reassessment has rendered harmless any error affecting the sentence adjudged at trial." *Id.* at 307. In our previous opinion, we found that the military judge's improper questioning of appellant during inquiry into the guilty plea, "adversely impinged on the critical constitutional right to remain silent," *Miller, supra* at 556 but, as pointed out by appellant, this Court did not explicitly state that we were persuaded beyond a reasonable doubt that our reassessment of the sentence had rendered harmless any error affecting the sentence at trial. In answer to this assertion, the Government observes that our initial opinion stated clearly, "[a]pplying the standards of *U.S. v. Sales,* 22 M.J. 305 (C.M.A.1986), we will reassess the sentence," *Miller, supra* at 556 which, according to the Government, should be interpreted as meaning the higher constitutional standard set forth in *Sales, supra* was applied. The Government correctly notes, however, that any further argument on this matter would be eliminated if we were to state explicitly the standard utilized. In order to lay this matter to rest, we will reassess the sentence again, expressly applying the higher standard set out in *Sales, supra.* Upon such reassessment, this Court is persuaded beyond a reasonable doubt that any error committed by the judge in his questioning of the accused, both with respect to the guilty plea inquiry and later at the sentencing stage of the trial, has been rendered harmless by the convening authority's reduction of the sentence to a bad conduct discharge standing alone.

We have not ordered a rehearing in this case because we are convinced that a sentence that includes a bad conduct discharge would have been imposed under any circumstances. If none of the information elicited by the judge had been developed at trial, that is, if he had not asked the questions during the plea providence inquiry concerning identification of the accused's drug supplier and had asked no questions of the accused at all at the sentencing stage, we believe a punitive discharge would still have been adjudged. Considering everything in a light most favorable to the accused, we are convinced, beyond a reasonable doubt, that nothing less than a punitive discharge would be appropriate for this accused and the offenses committed. Accordingly, the findings and sentence as approved below are, again, affirmed.

Judges BRIDGMAN, BURGESS, GRACE and JOSEPHSON concur.

6. In addition, we also note that as part of his probing in this area during the guilty plea inquiry, the judge elicited information from the prosecution that was inadmissible under Rule 301(f)(3), Military Rules of Evidence. It, too, may have prejudiced the accused as to sentence. That colloquy was as follows:

MJ: This aspect has not been followed up by the government, I take it?
TC: Your Honor, I believe during the investigation that was conducted into some of these charges, a Coast Guard Intelligence agent did, after giving the accused his rights, provide him with the opportunity to make a statement. He exercised his rights and remained silent at that point. I would anticipate that there may be some discussion after this trial is completed as to the possibility of information, but it does not have any direct involvement with the trial. (ROT 13)