**UNITED STATES, Appellee,**

v.

**Michael S. FERDINAND, Staff Sergeant, U.S. Air Force, Appellant.**

**No. 60,322.**
**ACM 26373.**

U.S. Court of Military Appeals.

Sept. 27, 1989.

Certiorari Denied Jan. 16, 1990.

See 110 S.Ct. 840.

For Appellant: *Major Lynne H. Wetzell* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi.*

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial convened at Offutt Air Force Base,

Nebraska, before a military judge alone. Contrary to his pleas, appellant was found guilty of four specifications of committing indecent acts against his own 7–year–old daughter, C, over a 2–year period, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to be confined for 4 years, reduced to pay grade E–1, and dishonorably discharged. The convening authority approved the sentence as adjudged, and the Court of Military Review affirmed the findings and sentence in an unpublished memorandum opinion dated April 21, 1988.

This Court granted review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE RELIED ON THE ORDER OF A STATE JUVENILE COURT DIRECTING THAT THE VICTIM IN THIS CASE NOT TESTIFY IN ANY OTHER COURT CONCERNING THESE OFFENSES.

The Government's case rested upon appellant's confession, which was given to Deputy Sheriff Robin Gabriel of Sarpy County, Nebraska, on March 30, 1987. This confession was corroborated by an earlier admission appellant had made to his wife and by a transcript of a videotaped interview between C and Deputy Sheriff Gabriel, which took place on the day after the confession was obtained.

The Government offered the transcript of the interview as an exception to the rule against hearsay, in that C was unavailable to testify at trial and the interview had requisite "circumstantial guarantees of trustworthiness" under Mil.R.Evid. 804(b)(5), Manual for Courts–Martial, United States, 1984. Defense counsel objected to admitting the transcript, arguing that the Government had not shown C was unavailable to testify as a witness and that the statement was not reliable.

The Government's proffer that C was unavailable was based upon the following: Prior to referral of charges to court-martial, appellant's daughter was assigned a guardian *ad litem* by the Separate Juvenile Court For Sarpy County, Nebraska. In addition, the Juvenile Court issued an order on August 13, 1987, prohibiting appellant's daughter "from testifying at any hearing or court proceeding outside the Separate Juvenile Court of Sarpy County, Nebraska,

concerning the incidents involved in this [Juvenile Court] proceeding." Shortly thereafter, appellant's wife took C and moved from their residence in Sarpy County, Nebraska, to Blaine, Minnesota. Mrs. Ferdinand was personally served in Minnesota with a subpoena for herself and a subpoena *duces tecum*, ordering her to appear at appellant's trial and to bring her daughter to testify. Mrs. Ferdinand appeared at trial but refused to bring her daughter.

Mrs. Ferdinand testified that her primary reason for not bringing her daughter was that C was undergoing therapy as a result of the sexual abuse and forcing her to testify would cause "a setback in her therapy." Mrs. Ferdinand based this upon her own observations of C, as well as the advice of a therapist. Mrs. Ferdinand relied upon the advice of the therapist that "there is no reason to put a child through that." Mrs. Ferdinand also testified that she had been told by the state-appointed guardian *ad litem* that if she were to bring C to testify, in violation of the Juvenile Court order, then the state would take custody of her daughter.

Mrs. Ferdinand indicated that she had consulted with an attorney prior to her decision to disobey the subpoena *duces tecum*. In addition, a stipulation of testimony from the guardian *ad litem*, who was also an attorney, indicated that she also "would refuse to produce" C to testify, "knowing full well the possible consequences of such refusal."

When questioned by the military judge as to her reasons for not bringing her daughter, the following colloquy took place:

Q: Do you understand you've been lawfully subpoenaed by the Federal Government to bring ... [C] with you to testify?

A: Yes, sir.

\*     \*     \*     \*     \*     \*

Q: And you understand that I can order you to do that and to comply with the subpoena, and if you do not, I can put you in jail, do you understand that?

A: Yes, Sir.

Q: Very well. I order you to bring her here to testify in this hearing. Do you agree to do that?

A: No, Sir.

Q: Why not?

A: Because I, as her mother, couldn't bring her in clear conscience. It's not right to have her testify against her father.

Based upon Mrs. Ferdinand's testimony, the military judge found that any attempt to force her to produce C to testify would be "a futile gesture" and ruled that C was unavailable. He also found the interview to have "circumstantial guarantees of trustworthiness," Mil.R.Evid. 804(b)(5), noting C's young age, her lack of animosity toward her father, and the fact that appellant's own confession corroborated C's statements. He therefore admitted the document.

■ We are not convinced that C was unavailable within the meaning of Mil.R. Evid. 804(b)(5). Admission of the interview at trial violated appellant's right to confrontation under the Sixth Amendment.

Child-sexual-abuse cases have compelled a dilemma of pitting an accused's Sixth Amendment right to confront and cross-examine witnesses against codified exceptions to hearsay.[1] The dilemma has been no less affected by society's interest in protecting a child from the trauma of testifying against an abusive parent or adult.[2]

The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." By the same token, the "Rule Against Hearsay," *McCormick on Evidence* §§ 244–53 (E. Cleary 3d ed. 1984), prohibits introduction of "a statement, other than the one made by the declarant while testifying at the trial," which is "offered in evidence to prove the truth of the matter asserted." Mil.R.Evid. 801(c) and 802. Thus, the rule against hearsay and the Confrontation Clause both reflect "the core of the values furthered by" the "right to 'confront' the witness at the time of trial." *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). Both "reflect[ ] a preference for face-to-face confrontation at trial." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (footnote omitted).

The Supreme Court has held, however, that the Confrontation Clause is not "a codification of the" rule against hearsay. *California v. Green*, *supra* 399 U.S. at 155, 90 S.Ct. at 1933–34. Further, although the "rule against hearsay ... is riddled with exceptions," *Ohio v. Roberts*, *supra* 448 U.S. at 62, 100 S.Ct. at 2536, the Court has upheld a number of these exceptions as not being violative of the Confrontation Clause, even though a declarant did not testify at trial. *Id.; United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Residual hearsay is permissible under Mil.R.Evid. 804(b)(5), provided the Government adequately demonstrates the declarant's "unavailab[ility] as a witness." *See* Mil.R.Evid. 804(a). In determining unavailability, "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Ohio v. Roberts*, *supra* 448 U.S. at 74, 100 S.Ct. at 2531; *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Nonetheless, "*if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation.* 'The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.' *California v. Green*, 399 U.S. at 189, n. 22 [90 S.Ct. at 1951, n. 22] ....,*" United States v. Burns*, 27 MJ 92, 96 (CMA 1988), quoting *Ohio v. Roberts*, *supra* 448 U.S. at 74, 100 S.Ct. at 2543 (emphasis added). Moreover, a mili-

---

1. *See* Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship*, 72 Minn.L. Rev. 523 (1988); Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv.L.Rev. 806 (1985).

2. *Cf. Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 2803–04, 101 L.Ed.2d 857 (1988) (O'Connor, J., concurring).

tary judge is not merely a passive observer in determining a witness' unavailability. *Cf. United States v. Rousseau*, 25 MJ 188 (CMA 1987) (Everett, C.J., concurring in the result); *United States v. Hinton*, 21 MJ 267 (CMA 1986).

■ Obviously, there was no problem of locating either Mrs. Ferdinand or C. *Cf. United States v. Wind*, 28 MJ 381 (CMA 1989); *United States v. Hubbard*, 28 MJ 27 (CMA 1989). The Government had issued the subpoena *duces tecum* to Mrs. Ferdinand personally at her residence in Blaine, Minnesota, after she had moved with her daughter from Nebraska. It would appear that the Government had exercised reasonable, affirmative measures to secure C's presence as a witness. Affirmative measures to protect an accused's Sixth Amendment right to confront and cross-examine witnesses, however, do not end simply with service of a subpoena.

Although we are not satisfied with the subsequent efforts by the Government and the military judge to secure the child's presence at trial, we do not agree with appellate defense counsel's argument that the military judge relied solely on the Sarpy County Juvenile Court Order in determining that C was unavailable. The record evinces that Mrs. Ferdinand's paramount fear was the psychological and emotional impact that testifying at trial would have upon her daughter. She maintained her intransigence in the courtroom, reinforced by her attorney, that she "couldn't bring ... [C] in clear conscience ... to have her testify against her father."

Any reliance Mrs. Ferdinand placed upon the court order is substantially outweighed by her concern for her daughter's emotional welfare. The record does not demonstrate that she thought or had been advised by counsel that the order from juvenile court superseded the Federal subpoena. The record also does not indicate that the military judge found this to be the law.

■ The military judge's assessment, however, that any further efforts to secure C's presence at trial would be "futile" was inaccurate. A military judge is hardly exercising his contempt powers under Article 48, UCMJ, 10 USC § 848, when he finds that any efforts to compel a mother to produce a child to testify would be "futile" simply because she threatens to disobey his order before it is even issued. *Cf. United States v. Rousseau, supra.*[3]

■ We are mindful, as are several state jurisdictions, that a child may be found to be unavailable to testify if a psychiatrist or psychologist has determined that participation in a trial would be too traumatic for the child.[4] Nothing in the record indicates, however, that any determination of this sort was ever made. At a minimum, there was no determination that C herself refused to testify. See especially *United States v. Hines*, 23 MJ 125, 133 (CMA

---

3. "Process issued in court-martial cases to compel witnesses to appear and testify ... shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and *shall run to any part of the United States* ...." Art. 46, Uniform Code of Military Justice, 10 USC § 846 (emphasis added). Article 47, UCMJ, 10 USC § 847, states:

(a) Any person not subject to this chapter who—

(1) has been duly subpoenaed to appear as a witness before a court-martial,....

(2) has been duly ... tendered the fees ... of a witness ...; and

(3) willfully neglects or refuses to appear or refuses ... to produce any evidence which that person may have been legally subpoenaed to produce;

is guilty of an offense against the United States.

(b) Any person who commits an offense named in subsection (a) shall be tried on information in a United States district court....

Although the court-martial had no final jurisdiction to punish Mrs. Ferdinand, *United States v. Praeger*, 149 F. 474 (D.C.Tex.1907); *United States v. Rousseau*, 25 MJ 188 (CMA 1987) (Everett, C.J., concurring in the result), it strains credulity to suggest that an order issued by a state court supersedes a Federal subpoena, issued by the President of the United States, pursuant to a federal statute. US Const. art. VI. As the record fails to show that the military judge thought this to be the law, we need not address the power of a Federal subpoena issued in a court-martial. *Cf. United States v. Hinton*, 21 MJ 267 (CMA 1986).

4. Graham, *supra* (n. 1).

1986).[5] A military judge is hardly bound to accept a mother's unprofessional, lay opinion that requiring a child to testify at trial would so traumatize the child as to outweigh an accused's right to confrontation under the Sixth Amendment. Under these circumstances, it was error for the military judge to find that C was unavailable to testify at trial.[6]

■ Upon examination of the record, however, we are convinced that admission of C's statements was harmless beyond a reasonable doubt.[7] *Cf. Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Remai*, 19 MJ 229 (CMA 1985).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

**5.** There is no indication C refused to testify as a result of any control, coercion, or influence by appellant. *Id.*

**6.** Although C's statement substantially corroborates appellant's confession, *United States v. Arnold*, 25 MJ 129 (CMA 1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); *United States v. Hines*, 23 MJ 125 (CMA 1986), we have reservations as to whether the reliability of the *ex parte* interview would pass constitutional muster. Deputy Sheriff Gabriel testified that it was her intent to use C's statements to corroborate appellant's confession. The transcript of the interview shows a number of leading questions about the incidents. Notwithstanding Mrs. Ferdinand's opinion that C was a truthful person, there is nothing in the transcript of the interview to indicate that C understood the difference between telling the truth and telling a lie. Finally, Deputy Sheriff Gabriel interviewed C alone, with no opportunity for appellant to effect any type of cross-examination. *Cf. California v. Green*, 399 U.S. 149, 157, 90 S.Ct.1930, 1934, 26 L.Ed.2d 489 (1970). These factors place the statement within the realm of the "investigative process" that we have heretofore found suspect. *United States v. Barror*, 23 MJ 370, 372 (CMA 1987) (citing *Hines*). As this issue was not raised on appeal, we need not address it here.

**7.** In addition to appellant's confession and admission to his wife about molesting his daughter, an Air Force Nurse gave corroborating physical evidence after having examined appellant's daughter.