UNITED STATES, Appellee,

v.

Guadalupe ORTIZ, Sergeant First Class U.S. Army, Appellant.

No. 67,120.

CM 9001665.

U.S. Court of Military Appeals.

Argued July 30, 1992.

Decided Sept. 28, 1992.

For Appellant: *Captain Edward T. Keable* (argued); *Colonel Robert B. Kirby, Captain James M. Heaton, Captain Emmett G. Wells* (on brief).

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Major Joseph C. Swetnam* (on brief); *Lieutenant Colonel Joseph A. Russelburg.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried in West Berlin before a general court-martial composed of officer members before the collapse of the Berlin Wall. Contrary to his pleas, he was found guilty of committing indecent acts with a child and committing indecent acts with another[1], in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a reprimand, dishonorable discharge, confinement for 8 years, forfeiture of all pay,[2] and reduction to Private E–1. The convening authority approved only so much of the sentence as provided for reduction to the grade Private E–1, confinement for 5 years, and dishonorable discharge from the service. The Court of Military Review affirmed the findings of guilty and the sentence. 33 MJ 549 (1991). This Court granted the petition for review on the following issues:

1. The indecent-acts offense was with the same victim who had turned 17.

2. The sentence to forfeitures was: "To forfeit all pay, less all allowances." (R. 347.) The decision below construed this as "total forfeitures." 33 MJ 549, 550 (1991). In fact it is only forfeiture of all pay.

## I

WHETHER A WITNESS WAS "UN-AVAILABLE" WITHIN THE MEANING OF THE "FORMER TESTIMONY" EXCEPTION TO THE HEARSAY RULE AND THE SIXTH AMENDMENT, WHERE THE WITNESS FAILED TO APPEAR FOR TRIAL DESPITE SERVICE OF A SUBPOENA, BUT THE MILITARY JUDGE ISSUED NO WARRANT OF ATTACHMENT AND DID NOT GRANT A REASONABLE CONTINUANCE TO LOCATE AND COMPEL THE ATTENDANCE OF THE WITNESS.

## II

WHETHER A WITNESS'S ARTICLE 32 TESTIMONY, ADMITTED AT TRIAL PURSUANT TO THE "FORMER TESTIMONY" EXCEPTION, MAY INCORPORATE AN *EX PARTE* VIDEOTAPED INTERVIEW NOT INTRODUCED INTO EVIDENCE AT THE ARTICLE 32 INVESTIGATION.

## III

WHETHER THE STAFF JUDGE ADVOCATE'S FAILURE TO PROVIDE APPELLANT WITH AN OPPORTUNITY TO COMMENT ON AN ADDENDUM TO THE POST–TRIAL RECOMMENDATION CONTAINING NEW MATTERS WAS "HARMLESS ERROR."

Because we hold that the witness was not unavailable within the meaning of Mil. R.Evid. 804(b)(1), Manual for Courts–Martial, United States, 1984, we reverse and remand.

On March 3, 1990, appellant's natural daughter, L, went to the Berlin office of the U.S. Army Criminal Investigation Command (CID) to discuss sexual-abuse allegations that she had brought against her father. L, accompanied by her mother and a family friend, spoke extensively with CID agents about the charges. The CID agents recalled L and Mrs. Ortiz 3 days later to videotape a second interview with L, who was not placed under oath. L described a pattern of sexual abuse by her father dating back to his deployment at Fort Campbell, Kentucky, in 1980. Neither appellant nor appellant's counsel was present during the videotaped questioning.

On March 15, 1990, the videotape was transcribed by CID, and L then executed a sworn statement that the transcript reflected her true testimony.

The charges against appellant were investigated at an Article 32(b), UCMJ, 10 USC § 832(b), hearing on April 11, 1990. Called as a witness, L overcame tears and repeated the allegations of sexual abuse that she had made to CID in her March 6 videotaped interview. L was then subjected to cross-examination by appellant's defense counsel. L also identified her sworn statement of March 15, averring under oath that it was "truthful." The written transcript of the taped interview was admitted into evidence without any objection by appellant, but the videotape itself was neither shown nor introduced at the Article 32 hearing.

When trial commenced on May 29, 1990, trial counsel informed the court that, despite efforts by a family friend, military police, and trial counsel, L and Mrs. Ortiz could not be found. The military judge then issued a pair of subpoenas for L and her mother, which trial counsel attempted to serve personally.

When court reconvened the next day, however, trial counsel reported that L and Mrs. Ortiz had disregarded the subpoena and an offer of transportation. He also indicated that they had rejected additional attempts by a psychologist, the family friend, and a social worker to persuade them to attend. The military judge then directed the military police to serve a second subpoena upon the Ortizes. The military police were unsuccessful in their effort to locate L or her mother at their quarters or at L's school.

The military judge then inquired whether trial counsel intended to offer any prior statements by L in lieu of L's live testimo-

ny. Trial counsel offered L's Article 32 testimony and the videotaped interview of March 6, 1990. Over defense objection, the military judge declared L to be "unavailable" and admitted both the videotape and the Article 32 testimony transcript under the former-testimony exception to the hearsay rule. Mil.R.Evid. 804(b)(1). The Article 32 testimony was read to the jury members and her videotaped interview was played.

Not known by the judge but now known by us from the oral argument, Mrs. Ortiz did not leave the city. She went to the military police station the following day to obtain a key for the new locks the military police had installed. Additionally, she appeared as a witness for the defense during the sentencing portion of the trial.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

Under Mil.R.Evid. 804(a), unavailability as a witness "includes situations in which the declarant ... persists in refusing to testify ... despite an order of the military judge to do so," 804(a)(2); or "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance ... by process or other reasonable means," 804(a)(5).

As for the former-testimony exception to the hearsay rule, Mil.R.Evid. 804(b)(1) states that testimony is admissible if it was "given as a witness at another hearing of the same or different proceeding ... if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The rule also notes that Article 32 testimony is admissible if, as here, it is from a verbatim record.

 The Sixth Amendment's Confrontation Clause requires that the "unavailability" of the witness be shown before former testimony can be admitted as an exception

to the hearsay rule. *White v. Illinois,* ——— U.S. ———, ———, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992); *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). The landmark case in Confrontation Clause jurisprudence is *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), in which the Supreme Court held that a declarant is unavailable only when the prosecution has "made a good-faith effort to obtain his presence at trial." *Id.* at 74, 100 S.Ct. at 2543. The extent of this good-faith effort is defined by a reasonableness standard, because the Court also held that "[t]he law does not require the doing of a futile act." *Id.* at 74, 100 S.Ct. at 2543.

In its interpretation of *Roberts,* this Court has held that a declarant "is not 'unavailable' unless the Government has exhausted every reasonable means to secure his live testimony." *United States v. Burns,* 27 MJ 92, 97 (CMA 1988). The standard of review for determinations of availability by a military judge is "abuse of discretion." *United States v. Vanderwier,* 25 MJ 263, 266 (CMA 1987).

Thus, we are squarely faced with this question: Did the Government exhaust every reasonable means to obtain the presence of L and Mrs. Ortiz to testify at trial?

Reasonable means include obtaining subpoenas and writs of attachment. Civilians, like military personnel, are subject to subpoena to appear as witnesses at courts-martial (Arts. 46 and 47, UCMJ, 10 USC §§ 846 and 847, respectively); *United States v. Hinton,* 21 MJ 267 (CMA 1986); *see United States v. Ferdinand,* 29 MJ 164 (CMA 1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). A witness who refuses to honor a subpoena is subject to a military judge's warrant of attachment to forcibly compel the witness' attendance. *United States v. Hinton, supra* at 270–71; RCM 703(e)(2)(G)(i), Manual, *supra.*

 Of course, "[a] witness must be subject to United States jurisdiction to be subject to" United States process, RCM 703(e)(2)(A), Discussion, Manual, *supra*

(see Art. 46; *cf. United States v. Cordero,* 22 MJ 216 (CMA 1986) (German national cannot be compelled to appear as witness at court-martial in United States)). United States jurisdiction attaches to a United States citizen who is physically located in West Berlin. *United States v. Tiede,* 86 F.R.D. 227 (U.S. Court for Berlin 1979).

When a person refuses to appear, a judge should exercise contempt powers, if possible, or issue a warrant of attachment which orders the production of the witness. RCM 703(e)(2)(G).

A useful comparison may be drawn here to the facts of *United States v. Ferdinand, supra,* where a mother was served with a subpoena but refused to bring her daughter, allegedly a victim of sexual abuse, to trial. This Court overturned the military judge's decision against forcing the mother to comply with the subpoena, holding that "[a] military judge is hardly exercising his contempt powers under Article 48, UCMJ, 10 USC § 848, when he finds that any efforts to compel a mother to produce a child to testify would be 'futile' simply because she threatens to disobey his order before it is even issued." 29 MJ at 167.

Also, in *United States v. Cokeley,* 22 MJ 225 (CMA 1986), this Court held that the military judge should have granted a continuance to determine whether an absent witness could be located and brought to court within a reasonable time. *Id.* at 230.

◼ Here, issuance of a warrant of attachment and granting a continuance for a few days would have provided an opportunity for the military police physically to attempt to serve the warrant of attachment and bring the witnesses to court. That they were still in the city of Berlin was evidenced by their going to the military police station to get a new set of keys for their quarters. Also, Mrs. Ortiz appeared as a witness for appellant at sentencing the next day after the judge's ruling. It was highly unlikely they would have left the city of Berlin or the American military community in that city in 1 or 2 days. Addi-

tionally, there is no evidence that the defense team sought to interfere with their presence at trial. *Cf. United States v. Clark,* 35 MJ 98 (CMA 1992). In fact, if a continuance was granted, the judge could have asked for defense counsel's cooperation. Furthermore, there was no pressing need to proceed immediately with the trial. One or two days of government effort may well have eliminated this needless issue.

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

WISS, Judge (concurring):

I agree with the majority that civilians, like military personnel, are subject to subpoena to appear as witnesses at courts-martial and that a witness who refuses to honor a subpoena is subject to a military judge's warrant of attachment to forcibly compel the witness' attendance. I agree, as well, though, that a particular witness must be subject to United States jurisdiction in order to be subject to these United States processes.

In the circumstance of a United States citizen who physically is located on a U.S. military installation in a foreign country, United States jurisdiction attaches via the Uniform Code of Military Justice (*see* Art. 2(a)(12), UCMJ, 10 USC § 802(a)(12); *cf. Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (U.S. citizens (civilians) in a foreign country are *not subject to trial* by courts-martial for their criminal conduct)) and, thus, they are subject to United States jurisdiction at least for service of process (*cf. United States v. Bennett,* 12 MJ 463 (CMA 1982) (U.S. citizen cannot be compelled to travel from United States to foreign country to testify at U.S. court-martial)).

Applying these applicable legal principles to the operative facts, I join the majority's

conclusion that the military judge abused his discretion in not issuing warrants of attachment for these material witnesses and in not ordering a continuance of some reasonable time to permit the warrants to be served and the witnesses to be delivered to the court.[1] *See United States v. Cokeley,* 22 MJ 225 (CMA 1986). The record does not establish that the Government used these reasonable means to obtain the presence of the absent witnesses or that these specific efforts would have been "futile acts." *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). As these steps were not taken, the witnesses were not "unavailable" under the circumstances of this case.[2] *See United States v. Burns,* 27 MJ 92, 97 (CMA 1988).

1. The majority opinion correctly observes that there is no indication that the defense interfered in any way with the Government's efforts to obtain the witnesses or that the defense would have interfered with any continuing efforts. *Cf. United States v. Clark,* 35 MJ 98 (CMA 1992). I do not agree with the implication in that opinion, though, that there is any obligation on the defense to respond to requests for affirmative "cooperation" in obtaining prosecution witnesses. 35 MJ at 102. Defense counsel is an *advocate* and, as such, acts independently of and in opposition to the prosecution. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

2. Of course, if the witnesses then could not be located, the military judge might well conclude in his discretion that they were "unavailable" within the meaning of Mil.R.Evid. 804(1)(5), Manual for Courts–Martial, United States, 1984, so as to permit testimony from a former hearing under Mil.R.Evid. 804(b)(1). Although the majority opinion cites Mil.R.Evid. 804(1)(2)—in addition to Mil.R.Evid. 804(a)(5)—to help define "unavailability," that subsection is not relevant under the facts of this case where the witnesses are not in the courtroom refusing to testify. *See United States v. Rousseau,* 25 MJ 188 (CMA 1987) (Everett, C.J., concurring in the result).