UNITED STATES

v.

**Daniel "NMN" GREEN, Gunners Mate Third Class, U.S. Coast Guard.**

Docket No. 1032.
CGCMG 0084.

U.S. Coast Guard Court of
Criminal Appeals.

June 7, 1996.

Trial Counsel: LT Robert B. Birthisel, USCG.

Defense Counsel: LT Geoffrey M. Coan, JAGC, USNR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR John Koeppen, USCG.

Before Panel Two, BAUM, FEARNOW and O'HARA, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by general court-martial judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: two specifications of unauthorized absence for four and eighteen days respectively; one specification of wrongful appropriation of a motor vehicle and one specification of larceny of $4800, military property of the United States; and eight specifications of obtaining services by false pretenses, in violation, respectively, of Articles 86, 121, and 134 of the Uniform Code of Military Justice. The judge sentenced Appellant to a bad conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged, but suspended all confinement in excess of twelve months for twelve months from the date of trial, pursuant to the terms of the pretrial agreement. Before this Court, Appellant has assigned five errors, which have been briefed by both sides. The case also has been orally argued. Motions contained in the briefs of the parties not previously granted are hereby granted. Appellant has noted that the initial promulgating order of the convening authority is deficient in that it fails to reflect the pleas of the accused, as required by R.C.M. 1114(c)(1). A corrected promulgating order should be issued as indicated by Appellant.

## I

THAT THE MILITARY JUDGE ERRED BY ADMITTING, OVER DEFENSE OBJECTION, HEARSAY EVIDENCE OF ILLEGAL DRUG ABUSE BY APPELLANT DURING THE SENTENCING PORTION OF THE TRIAL

In his first assignment, Appellant complains that during sentencing the judge mistakenly admitted testimony of a Coast Guard Investigations agent called by the prosecution as a witness in aggravation. The agent testified that he was told by a female acquaintance of Appellant's that she and Appellant had spent a great deal of time together for several weeks before his apprehension and that they both had used "crack" cocaine, most of which, if not all, had been purchased with money supplied by Appellant. Objections to this testimony were raised at trial and are asserted again here. Appellant cites several military rules of evidence that were violated by the admission of this testimony, but, in my view, only one need be addressed, Military Rule of Evidence (M.R.E.) 804, the rule dealing with hearsay exceptions when the declarant is unavailable.

## A

### Statements Against Interest Under M.R.E. 804

More specifically, M.R.E. 804(b)(3) provides for admission in evidence of statements against interest if the declarant is unavailable as a witness. Included within the rubric of statements against interest are those which so far tend to subject the declarant to civil or criminal liability that a reasonable person in the position of declarant would not have made the statement unless the person believed it to be true. The statement in question was made by a known prostitute to a Coast Guard agent after Appellant had been apprehended and, as asserted by Appellant, it is entirely likely that she may have thought she would gain some benefit to herself by implicating appellant as a partner-in-crime. If so, her account would not qualify for the statement-against-interest exception to the hearsay rule. In this regard, I agree with Judge O'Hara's development of the subject in his separate opinion. That issue is not even reached, however, if the declarant is not first determined to be unavailable as a witness.

In order to introduce a statement against interest based on unavailability of the declarant, M.R.E. 804(a)(5) requires a showing that the proponent of the statement "has been unable to procure ... the declarant's attendance *or testimony* by process or other reasonable means...." (Emphasis added). Appellant argues that the "or testimony" portion of that rule means that the proponent of the hearsay must "at least attempt to obtain the declarant's testimony, subject to cross-examination, in some manner other than appearance at trial, such as by taking

the declarant's deposition." Appellant's brief at 10. That argument was also made at trial and rejected by the military judge, who apparently accepted the trial counsel's contention that the Government need not attempt to depose the declarant before obtaining a ruling of unavailability under M.R.E. 804(a)(5). That view has also been advanced by the Government before this Court, arguing that M.R.E. 804(a)(5) does not require an attempt to depose. In support of that position, the Government has cited an Air Force unpublished opinion, *United States v. Sutton,* ACM 29318, 1993 WL 541345, 1993 CMR Lexis 618 (A.F.C.M.R. December 21, 1993), which discusses the Federal Rule requiring an attempt to depose and concludes that, while there are sound policy reasons for such a Rule, admission of hearsay under the Military Rule does not become error simply because no deposition was shown to have been sought. I am of a different mind on this point.

## B

### Applicability of Federal Rule of Evidence 804(a)(5)

Appellant has provided as supplemental citation of authority the concurring opinion from the Court of Appeals for the Armed Forces decision in the *Sutton* case, *United States v. Sutton,* 42 M.J. 355, 357 (1995) (Wiss, J. concurring), in further support of the contention that unavailability cannot be established without an attempt at obtaining a deposition.

In his concurring opinion, Judge Wiss said the following in *Sutton* with respect to M.R.E. 804(a)(5):

> The legislative history of the identical federal rule makes clear the drafter's intent that this includes at least an effort to depose the declarant. *See* J. Weinstein & M. Berger, 4 Changes at 804–8 to 804–10 and para. 804(a)[01] at 804–57 (1995).
>
> The Drafters' Analysis of Mil.R.Evid. 804(a)(5) reflects that the rule is "taken from the Federal Rule without change," except as to a different subsection from the one relevant here. Manual, *supra* at A22–51 (Change 2). In the absence of any

indication that the drafters' intent was, nonetheless, for a different meaning and application, the same requirement should be ascribed to the military rule as to the federal rule. *See United States v. Powell,* 22 MJ 141, 143 (CMA 1986); S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* (hereafter Saltzburg) 843 (3d ed. 1991). Id. at 357.

Judge Wiss concluded that the military judge abused his discretion in finding the hearsay declarant unavailable for purposes of M.R.E. 804(a) without first issuing an order for the declarant to submit to a deposition. While this conclusion did not constitute the holding of the Court, I, nevertheless, believe it is the law we should be following in light of the interpretation of M.R.E. 804(a)(5) drawn from its legislative history.

## C

### Legislative History of Federal Rule of Evidence 804(a)(5)

Proposed Federal Rules of Evidence were first drafted by an Advisory Committee on Rules of Evidence appointed by Chief Justice Earl Warren in 1965. After circulation and revision of those rules based on comments received, the Supreme Court approved a final draft in 1972, which was submitted to Congress for its express approval, as required by Public Law 93–12, which had been enacted in early 1973. The Advisory Committee's Rule 804(a)(5) contained no requirement that an attempt be made to take the deposition of a declarant or obtain testimony in some other form, but the House of Representatives amended the rule to require that very thing for three hearsay exceptions, which included statements against interest. The Senate rejected the amendment seeing it as a needless, impractical and highly restrictive complication. When the two versions went to House/Senate conference, however, the House version of Rule 804(a)(5) was the one ultimately adopted and signed into law. See J. Weinstein & M. Berger, 4 Weinstein's Evidence, supra, and Saltzburg, Martin, & Capra, 3 Federal Rules of Evidence Manual, Legislative History at 1656–1665. That is the same rule subsequently promulgated for

the military by the President as M.R.E. 804(a)(5).

## D

### Decisions Interpreting Federal Rule of Evidence 804(a)(5)

With this legislative history as background, it is easy to understand the interpretation given Federal Rule 804(a)(5) by Federal Courts, that the declarant-unavailability requirement with respect to a hearsay statement against interest is not met without a showing that other forms of testimony, such as depositions, are unavailable. For example, in *United States v. Curbello*, 940 F.2d 1503 (11th Cir.1991), a case with factual similarities to the one before this Court, the hearsay post-arrest statement of a co-conspirator, made after the conspiracy ended, was admitted by the trial court under F.R.Evid. 804(b)(3) as a declaration against interest by an unavailable declarant. On appeal, the U.S. Court of Appeals for the Eleventh Circuit had this to say:

> The sole basis for a conclusion that Lopez [the absent declarant] was unavailable was a representation by the prosecutor that Lopez was in prison in the Bahamas.... The Government did not show that it had been unable to procure Lopez's attendance or testimony "by process or other reasonable means." Before this court it offers only a three-line footnote, with no citation of authority, saying that Lopez's unavailability as a witness was established by the fact that he was imprisoned in the Bahamas. This is not sufficient.
>
> ....
>
> The United States could have sought to take Lopez's deposition under Rule 15, F.R.Crim.P. ... Or the government could have attempted to utilize letters rogatory obtained through the district court and forwarded through diplomatic channels....

Id. at 940 F.2d 1505, 1506.

In *Campbell v. Coleman Co., Inc.*, 786 F.2d 892 (8th Cir.1986), the Court said:

> Before a statement against interest may be admitted, the proponent of the evidence must demonstrate that the declarant is "unavailable." *United States v. Pelton*, 578 F.2d 701 (8th Cir.), *cert denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). Rule 804(a)(5) provides that a declarant is "unavailable" if "absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3) [statement against interest] or (4), his attendance or testimony) by process or other means." This subsection is concerned with the absence of testimony, rather than the physical absence of the declarant. See *generally* H.R. 1597, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, p. 7051; Cotchett and Elkund, *Federal Courtroom Evidence*, 163 (1984). Hayes [the declarant] was absent from trial, but his testimony was available. Coleman had taken his deposition on July 5, 1984, eight months before trial. Since Hayes was not unavailable within the meaning of Rule 804(a)(5) and (b), his hearsay statements could not be admitted under the "statement against interest" exception in Rule 804(b)(3).

Id. at 786 F.2d 895, 896.

Finally, *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F.Supp. 1190 (E.D.Pa. 1980), a District Court opinion relating to the "unavailability" requirement for admission of former testimony under Rule 804(a)(5), recognized a different requirement for admission of a statement against interest, when it said:

> Rule 804(a)(5) is written in the disjunctive. The rule, as promulgated by the Supreme Court, required only a showing of inability to procure *attendance* of the declarant with respect to all the 804(b) exceptions. However, the House Judiciary Committee added language to the Rule which provides that "in the case of a hearsay exception under subdivision (b)(2), (b)(3), or (b)(4)," a proponent must also be unable to procure the *testimony* of the declarant. The House Committee noted:
>
> > the amendment is designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the wit-

ness being deemed unavailable. The Committee, however, recognizes the propriety of an exception to this additional requirement when it is the declarant's former testimony that is sought to be admitted under subdivision (b)(1). House Report at 15, U.S.Code Cong. & Admin.News 1974, p. 7088. While the Senate deleted the language added by the House, the Conference Committee adopted the House version. Thus, in the Rule as enacted, there is no additional requirement that a proponent of former testimony attempt to depose the declarant.

Id. at 505 F.Supp. 1249, 1250.

### E

### M.R.E. 804(a)(5) As Applied To The Facts Of This Case

The conclusion from the foregoing is that under the Federal Rule, in addition to absence from trial and inability to obtain the witness's attendance, there must be a showing that a deposition or some other form of testimony cannot be obtained before a statement against interest is admissible. Given the adoption by the President of M.R.E. 804(a)(5), unchanged in this regard from the Federal Rule, I believe the same interpretation must be applied for courts-martial, at both the merits and sentencing stages of trial, unless at sentencing the rules of evidence have been relaxed in accordance with R.C.M. 1001(c)(3), which is not the case here. If such proves burdensome for courts-martial and warrants a different rule for the military, the avenue for correction is change by the President, not the courts.

Here, the only showing by the Government of unavailability of the witness was a letter placed in evidence by the trial counsel from the Chief Assistant State Attorney for the Fifth Judicial District of Florida regarding the trial counsel's request for the witness's attendance at a hearing in Portsmouth, Virginia. According to the letter, the witness, Ms. Ocean L. Dodson, was currently serving a sentence for a criminal violation in Florida, and that in order for her to appear in compliance with a subpoena it would be necessary for her to be released from jail, which the state attorney said would require mitigation of the sentence. The letter went on to state that, because of a Florida rule divesting a trial court of jurisdiction to reduce or mitigate a sentence after 60 days, there is no mechanism for reducing the sentence for her to appear, short of an executive pardon, and that the office of state attorney would object to any attempt to have her released early.

Appellant submits that the letter's suggestion that the state would never permit an incarcerated person out of jail to testify as a prosecution witness unless the person was released permanently by executive pardon is simply incredible. We, too, find it hard to believe that conditions could not have been imposed for temporary release under guard to allow the witness to testify. The words of Mr. Justice Marshall in *Barber v. Page*, 390 U.S. 719, 724 n. 4, 88 S.Ct. 1318, 1321 n. 4, 20 L.Ed.2d 255 (1968), bear consideration on this point, "For witnesses in prison, quite probably many state courts would utilize the common-law writ of habeas corpus *ad testificandum* at the request of prosecutorial authorities of a sister State upon a showing that adequate safeguards to keep the prisoner in custody would be maintained." There is no indication in the record that any effort was made along these lines or even discussed.

From my perspective, whether such was required or whether trial counsel's efforts resulting in the letter from Florida constituted reasonable means taken to procure the witness's attendance at trial need not be decided because there was no showing of any attempt to depose the witness or to obtain her testimony in some other manner as an alternative to attendance at trial before ruling the witness unavailable under M.R.E. 804(a)(5). Since no showing in that regard was made, I find it was error for the judge to admit the statement against interest under M.R.E. 804(b)(3) based on unavailability of the declarant. In my view, this error admitting hearsay that implicated Appellant in unrelated and uncharged misconduct involving purchase and use of crack cocaine materially prejudiced his substantial rights and warrants either a sentence rehearing or reassessment of the sentence. Contributing to

my conclusion that substantial rights were materially prejudiced is the fact that the erroneously admitted evidence was offered by the prosecution for purposes of increasing the sentence after the Government had promised in the pretrial agreement not to go forward on drug charges. I am mindful of the fact that in this trial by judge alone the judge indicated she would give limited consideration to the evidence, as pointed out by Judge O'Hara. Nevertheless, I am unable to conclude, as my brothers have, that any error was harmless.

## II

THAT THE GUILTY PLEAS OF THE ACCUSED TO EIGHT SPECIFICATIONS OF OBTAINING SERVICES BY FALSE PRETENSES UNDER CHARGE VII WERE IMPROVIDENT

■ In this assignment, Appellant contends that his pleas of guilty to obtaining services under false pretenses in violation of Article 134, UCMJ, were improvident because the services alleged to have been obtained were rentals of motor vehicles, which he says are personal property not services. Appellant was charged in eight specifications with falsely pretending to have authority to use his government Diner's Club card to rent motor vehicles and by that means wrongfully obtaining the use of various automobiles. Appellant does not challenge the false pretenses aspect of these offenses, only what was obtained by those pretenses. He argues that his actions may have supported a charge of wrongful appropriation of a motor vehicle in each instance, but not that of services. In response, the Government, citing *United States v. Plante,* 36 M.J. 626, 628 (A.C.M.R. 1992), says the act of fraudulently obtaining a rental car includes receipt of services from a car rental agency. Although the holding in *United States v. Plante,* supra, relates to larceny of money from an insurance company for fraudulently obtaining a replacement rental car billed to the insurance company, the Court did say, in so ruling, that the accused had received *services* from the car rental agency. The Government has expanded upon that conclusion by pointing out that, in addition to valuable service in the form of

use of a vehicle provided by a rental company, a contract with a car rental company necessarily includes other services such as storage and maintenance of the vehicle and warranties of fitness and convenience to the renter. We agree with the Government's contention. By renting a vehicle from such a company, Appellant obtained not only tangible property in the form of an automobile, he also obtained necessary services as a part of that rental agreement. For that reason we find Appellant's pleas of guilty to fraudulently obtaining services to be provident.

## III, IV, & V

■ In his last three assignments, Appellant contends that he was denied military due process by the Government's failure to provide written advice to the convening authority pursuant to Article 34, UCMJ; that a specification alleging wrongful appropriation of a Ford Explorer is multiplicious for sentencing purposes with a specification alleging obtaining the use of the same Ford Explorer by false pretenses; and that this Court lacks jurisdiction because of improper civilian judge appointment. We reject each of these assignments. Appellant waived an investigation under Article 32, UCMJ, and, by not objecting at trial, he also waived the staff judge advocate's failure to provide written advice to the convening authority pursuant to Article 34, UCMJ. The specification alleging wrongful appropriation of a Ford Explorer relates to Appellant's keeping the vehicle beyond the allotted time, the use of that vehicle having been initially obtained under false pretenses. We believe these are two separate offenses for both findings and sentence. Finally, Appellant's last assignment has been resolved against him by *United States v. Ryder,* 44 M.J. 9 (1996).

## CONCLUSION

Pursuant to Article 66, UCMJ, we have determined that the findings are correct in law and fact. I have found prejudicial error bearing on the sentence, as discussed with regard to Appellant's Assignment I. My brothers, however, have concluded that any error committed at sentencing was harmless and they have determined the sentence

should be affirmed. Accordingly, the findings of guilty and sentence as approved and partially suspended below are affirmed.

O'HARA, Judge, concurring in part and in the result:

I agree for the most part with the lead opinion by the Chief Judge, but I decide the first assignment of error without reaching the issue of unavailability within the meaning of Military Rule of Evidence (MRE) 804(a)(5).[1]

## THE PRETRIAL AGREEMENT

Appellant was originally charged with the wrongful use of cocaine in violation of Article 112a, UCMJ. As part of the pretrial agreement, "[t]he government agree[d] to not go forward on all not guilty pleas." AE VI at p. 5. Following the judge's acceptance of appellant's pleas, the government withdrew the drug-use charge, as well as the other charges to which the defendant had pled not guilty per the pretrial agreement. The government then during the sentencing phase of the trial introduced evidence, over defense objections, on appellant's use of cocaine, which was the subject of the withdrawn charge, as evidence in aggravation under Rule for Courts-Martial (RCM) 1001(b)(4) in the form of statements against penal interest under MRE 804(b)(3) by appellant's female companion to

Coast Guard special agents. The wording of the pretrial agreement would seem to have been broad enough to include all phases of the court-martial. However, the appellant did not object at the trial or before us that the introduction of this evidence implicated the pretrial agreement. Consequently, I can only infer that the parties apparently did not come to an understanding on the intended breadth of this provision. The ambiguity could have been avoided had counsel been more specific about what was being agreed to, so as to preclude later complaints about withdrawn charges being "backdoored". See *U.S. v. Hall,* 29 M.J. 786, 792 (A.C.M.R.1989) ("The government chose not to charge those more aggravated offenses on which it lacked confidence that the evidence could prove beyond a reasonable doubt, and the government should not achieve a sentencing impact via the back door."). Moreover, if the government had been more upfront about its intention to introduce "no-longer-charged misconduct" during sentencing, the other parties could have been better prepared to deal with this complex question, as our lengthy discussions here underscore.

## UNCHARGED MISCONDUCT IN THE SENTENCING PHASE

The government initially attempted to show the defendant's illegal drug use with a

---

1. To the extent that the Florida Assistant State Attorney's letter (AE VIII) suggests that incarcerated individuals are per se unavailable as witnesses, it is untenable and raises a question whether it suffices, standing alone, as showing the government's "good-faith effort". I agree with the lead opinion that the practice under the Federal Rule, from which the MRE is derived, is that an attempted deposition may be necessary to satisfy the unavailability requirements of Rule 804(a)(5). Such Federal practice is persuasive in construing MRE 804(a)(5) in like circumstances. However, the Federal courts do not extend the adversarial process in criminal cases to sentencing, as is done in courts-martial. Therefore, I, like Judge Fearnow, question whether MRE 804(a)(5) requires that depositions of unavailable declarants should be attempted before their out-of-court statements may be admitted during the sentencing portion of a court-martial. Moreover, where such an attempt is necessary, there is some appeal to Judge Weinstein's suggestion that any requirement to take depositions should "be interpreted flexibly in instances in which it is impracticable but not legally impossible to depose the declarant. When a relatively small

claim would be overbalanced by the cost of a foreign deposition, or where the evidence comes to light during the trial and a continuance is not possible, the proponent should be found to be 'unable' to procure the deposition." Weinstein & Berger, Weinstein's Evidence Manual 17–7 n. 13 (1995); see also *U.S. v. Wind,* 28 M.J. 381, 384 n. * (C.M.A.1989) ("[W]hen a statement by a missing witness relates to a peripheral matter or has many indicia of reliability, more leeway may be granted the Government in proving that it has made a 'good-faith effort' to locate the witness."). Of course, Constitutional confrontation concerns, when applicable, may dictate less flexibility. See Weinstein & Berger, *supra* at 14–17 (The Supreme Court has "rejected the notion that the hearsay rule and the right to confrontation are fully congruent, although the Court acknowledged that both protect similar values."); *U.S. v. Hines,* 23 M.J. 125, 128 (C.M.A.1986) ("It is necessary ... to evaluate the out-of-court statements separately under the standards of the Confrontation Clause and the rules of evidence."). However, the appellant has not raised a Sixth Amendment argument in this case. See footnote 2, *infra.*

service record entry which supposedly documented the results of a urinalysis test given to the appellant. Besides urging that the government was backdooring this evidence, the defense objected to its introduction under MRE 404(b) and under MRE 403's balancing analysis and that it was improper aggravation. R. 114. The military judge correctly overruled the MRE 404(b) objection, noting that RCM 1001(b) was an independent basis for admissibility during sentencing. R. 114–15; *U.S. v. Wingart*, 27 M.J. 128 (C.M.A. 1988). As to the objection under MRE 403, the military judge stated:

> 403, I guess I just don't see that it's a—that there's really any extraordinary danger of unfair prejudice from this evidence. And its probative value may be minimal, but I don't think it's outweighed by any danger of unfair prejudice. I don't think I'm going to give it unfair weight. So that one I overrule.

R. 115. Subsequently, the military judge excluded this evidence as a business record because it appeared to have been created for the purpose of prosecution. R. 134. Therefore, she did not address whether the drug-use evidence was proper aggravation.

The judge's ruling on the drug-use evidence under MRE 804(b)(3) was based upon a proffer by the government that the declarant, a female companion of the defendant's, was interviewed by Coast Guard special agents and "told that Petty Officer Green and [she] were smoking crack cocaine together throughout this time frame that he was in Florida and that they were consuming between $100 and $200 a day on crack cocaine." R. 153. The government asserted that this was proper aggravation as to "what the [defendant] was doing with the government's money." R. 136. The defense objected that this was hearsay and again objected to its introduction under MRE 404(b) and under MRE 403's balancing analysis and further that no deposition was attempted and there were "no circumstantial guarantees of trustworthiness". R. 137–38. The military judge overruled "the objection based on 403(b) [sic] because by its nature, of course, evidence in aggravation tends to be prejudicial, but that doesn't make it unfairly prejudicial and so I

overrule that one." R. 139. She also found that the declarant was unavailable and a deposition was not required, and she overruled "the objection on 804". R. 139–142. Whether the drug-use evidence was proper aggravation under RCM 1001(b)(4) was not specifically addressed.

## THE EVIDENCE

The hearsay "statements" that were provided by the special agent in response to the government's questioning were:

> [The declarant] indicated that she had met [the defendant] in July and that the two had established a close personal relationship and that she had spent the majority of her time with him for the following several weeks.
>
> She indicated that the two of them had on several occasions smoked crack cocaine together.
>
> [Did she indicate how they obtained the crack cocaine?] It was purchased with money supplied by [the defendant].
>
> She indicated that it got to the point where they were between the two of them consuming between $100 to $200 of crack cocaine per day.
>
> [The declarant] was with [the defendant] at the time he was arrested.

R. 144–45. On cross-examination, the defense brought out that the taking of the declarant's statement was by two Coast Guard special agents in a Florida motel without Miranda warnings; that she initially denied any knowledge of the defendant's drug use; that she stated that she loved the defendant and was carrying his child and planned to marry him; that she revealed that the two of them had smoked crack cocaine together; and that "[s]he said [the defendant] purchased all of it." R. 146–47. The special agent also stated that the declarant was presently "incarcerated for repeated violation of prostitution that occurred in the State of Florida." R. 145. On redirect, the special agent testified that "[the declarant] indicated to us after she told us about the cocaine that she was on a diversion program in the State of Florida that required her to stay away from drugs because of her past addiction to it." R. 148. Throughout and following the

special agent's testimony, no further objections were made [2], and the government rested. Before recessing to decide a sentence, the military judge stated:

> I'm going to just note the fact that with regard to the evidence that the money may have been used for crack cocaine, I will, of course, not sentence him for cocaine use. I will only consider that for the purpose that the money stolen may have been used for illegal purposes as opposed to laudable purposes.

R. 164.

This case is a good example of why evidentiary questions should not be decided on proffers of counsel. As well said by one of our sister-Service courts:

> We notice that this matter was handled ... without calling the witness.... The military judge was thus deciding a hearsay objection based on trial counsel's representations of his expectation of the testimony. Worse yet, the representation was paraphrastic, not definite.... [W]e caution military judges that hearsay objections should be decided based on the testimony of the witness or the text of the document involved.... [The judge] would then at

least have the benefit of making his ruling on the exact matter in controversy, and not on trial counsel's representation of expected testimony. The two are most often different, and there is a trap for the parties when the difference is so broad that the earlier decision does not square with the actual testimony. MIL.R.EVID. 103(a)(1).

*U.S. v. Pabon,* 37 M.J. 836, 839 n. 2 (A.F.C.M.R.1993). Here, both counsel's proffer and the witness's testimony were paraphrastic, if not conclusionary. The testimony actually adduced was that the declarant "indicated" certain things, not what was specifically said or written. Such testimony leaves one wondering whether the evidence was the special agent's synopsis of what the declarant actually conveyed in some fashion during the interview or something even less concrete. In any case, it raises a question about whether the testimony of the special agent, with no clear exposition of what the declarant actually said, involved a "statement" within the meaning of MRE 801(a), much less one against penal interest under MRE 804(b)(3).[3] However, the parties in these proceedings treated the conclusionary testimony as if they were statements.[4] Had

---

**2.** On appeal, the appellant challenged the admission of the drug-use evidence on several grounds. It did not qualify as RCM 1001(b)(4) evidence. The judge abused her discretion in not explaining her balancing process under MRE 403, particularly when the evidence's probative value was outweighed by unfair prejudice. The uncorroborated hearsay was not reliable. And, the predicate unavailability determination was erroneous. The government's opposition did not suggest that waiver applied to any of the grounds being advanced by appellant on appeal. See footnote 4, *infra.*

**3.** See, e.g., *U.S. v. Dicker,* 853 F.2d 1103, 1109 (3d Cir.1988) ("the interpretation of clear statements is not permissible, and is barred by the helpfulness requirements of both Fed.R.Evid. 701 and Fed.R.Evid. 702"); *U.S. v. Cox,* 633 F.2d 871, 875 & 876 (9th Cir.1980) ("Lay witnesses are normally not permitted to testify about their subjective interpretations or conclusions as to what has been said." Although harmless error, the witness's testimony should not have been admitted because the witness's "understanding" did not aid the triers of fact in their understanding of what appellant had said and done.); *DeLoach v. U.S.,* 307 F.2d 653, 655 (D.C.Cir.1962) ("[W]hen a witness testifies in terms of conclu-

sions ..., such answers should be stricken and the witness should be required to state what was actually said. The conclusion or interpretation of a witness as to the meaning of what someone said is not admissible.").

**4.** See *U.S. v. Saccoccia,* 58 F.3d 754, 780 (1st Cir.1995):

> [The witness] tendered his explanation of [the declarant's] statement in direct response to a question by appellant's counsel on cross-examination. The answer was not followed by a timely objection or motion to strike. While appellant challenged [the witness's] qualifications to offer an opinion about [the declarant's] state of mind in a subsequent motion to strike, this was too late. See *United States v. Moore, 923 F.2d 910, 915 (1st Cir.1991)* (holding that Evidence Rule 103 requires that objections be made at the time evidence is offered); *United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983)* (same). The proper time to have registered an objection to [the witness's] explanation was immediately after it was uttered. Accordingly, any objection to the explanation has been waived.

See also *U.S. v. Ciulla,* 32 M.J. 186, 187 (C.M.A. 1991) ("Given, the tentative nature of the judge's ruling, it was incumbent upon the defense to

they subjected the "statements" to additional scrutiny at the trial level, the need for additional critical analyses, as we are doing here, may have been more apparent.

## EVIDENCE IN AGGRAVATION

As succinctly stated by Judge Cox:

An appropriate analysis of proffered government evidence on sentencing is first to determine if the evidence tends to prove or disprove the existence of a fact or facts permitted by the sentencing rules [citation omitted]. If the answer is yes, then is the proffered evidence admissible under either the Military Rules of Evidence or the more relaxed rules for sentencing.

*U.S. v. Martin,* 20 M.J. 227, 230 n. 5 (C.M.A. 1985); *U.S. v. Lynott,* 28 M.J. 918, 919 (C.G.C.M.R.1989) (quoting *Martin*). The government offered the evidence as aggravating circumstances under RCM 1001(b)(4) relevant to defendant's conversion of his $4800 travel advance. RCM 1001(b)(4) allows the trial counsel to "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."

The phrase "directly relating to or resulting from the offenses" imposes a "higher standard" than "mere relevance." *United States v. Gordon,* 31 MJ 30, 36 (CMA 1990).... Evidence qualifying for admission under RCM 1001(b)(4) must also pass the test of Mil.R.Evid. 403 ...; *see United States v. Wilson,* 35 MJ 473, 476 n. 5 (CMA 1992). A "military judge has wide discretion" in applying Mil.R.Evid. 403. *United States v. Yanke,* 23 MJ 144, 145 (CMA 1987).

*U.S. v. Rust,* 41 M.J. 472, 478 (1995). The initial inquiry should have been whether the offered drug use at $100–$200 a day "directly" related to or resulted from the theft of government funds. The government's theory on the evidence's relevance seemed to be that any misconduct involving the stolen funds was permissible. That view is overbroad.[5] Whether the stolen money is used for bad purposes, instead of good (a la Robin Hood), is really helpful in putting a theft crime in context for purposes of sentencing, is questionable. But cf. *U.S. v. Martinsmith,* 41 M.J. 343 (1995) (harmless error under the circumstances not to allow the defendant to answer a member's question during sentencing instructions on the whereabouts of the

---

renew the objection and seek clarification prior to the time sentence was announced. The objection was thus waived.").

5. Compare *U.S. v. Rust,* 41 M.J. 472, 478 (1995) (the three deaths' connection is too indirect to defendant's dereliction; an accused is not responsible for a never-ending chain of causes and effects); *U.S. v. Zakaria,* 38 M.J. 280 (C.M.A. 1993) (sexual perversion not relevant to the theft offenses); *U.S. v. Gordon,* 31 M.J. 30 (C.M.A. 1990) (negligent acts of commission did not suggest a failure to render assistance so that it could be said there was an adverse impact on soldiers' confidence in one another); *U.S. v. Wingart,* 27 M.J. 128 (C.M.A.1988) (other sexual misconduct not relevant to the charged sex offenses); *U.S. v. Bono,* 26 M.J. 240 (C.M.A.1988) (it is clear that there comes a point at which the misconduct is so unrelated to the offense charged as to be irrelevant; the crimes recited in the confession had no bearing on the offenses of which the appellant was convicted); and *U.S. v. Clabon,* 33 M.J. 904 (A.F.C.M.R.1991) (the subsequent car chase and denial of being a military member did not shed any light on the circumstances of the assault and battery for which the defendant was found guilty); with *U.S. v. Irwin,* 42 M.J. 479 (1995) (defendant's statements regarding threats to the victim were made after he broke into her

home and before he raped her were admissible aggravation); *U.S. v. Scott,* 42 M.J. 457 (1995) (evidence of the death and injuries giving rise to the dismissed voluntary-manslaughter and assault charges was admissible aggravation because it directly related to or resulted from the conviction for carrying a concealed weapon); *U.S. v. Shupe,* 36 M.J. 431 (C.M.A.1993) (5 additional drug transactions were part of an extensive and continuing scheme to introduce and sell LSD to numerous buyers assigned to the naval base and was proper aggravation because it showed the continuous nature of the charged misconduct and its full impact on the military community); *U.S. v. Wilson,* 35 M.J. 473 (C.M.A. 1992) ("victim-impact" testimony admissible); *U.S. v. Glazier,* 26 M.J. 268 (C.M.A.1988) (proper aggravation with the misappropriated vehicle offense that it was used for a joy ride during which the accused and another member consumed alcoholic beverages and a fatal accident ensued); *U.S. v. Yanke,* 23 M.J. 144 (C.M.A.1987) (black and white photo taken of the victim after death was proper aggravation of the circumstances surrounding the death, including the infant's struggle against the defendant); and *U.S. v. Lynott,* 28 M.J. 918 (C.G.C.M.R.1989) (aggravation evidence concerning the defendant's drug dealings directly related to his crimes of cocaine distribution and use).

stolen money). Because of the broad-brush approach to materiality taken during the court-martial, it is unclear whether the uncharged misconduct "related to" the offense because the thefts occurred when the defendant actually used his travel advance for unauthorized purposes or "resulted from" the offense because the theft was consummated sometime earlier when the defendant decided to use the money on an unauthorized spending spree. The stipulation of fact (PE 1) is silent as to the theft offense, and the guilty plea inquiry (R. 45–48 & 88–93) did not go into the specifics as to the formation of the intent to steal the travel advance money.[6] In any case, the proffered evidence does not directly show that the stolen funds were used to purchase cocaine. It requires an inference from the declarant's statement that the drugs were solely purchased by defendant, using his travel advance, because no other funds were available. Since the record is unilluminating as to the defendant's total money situation, the military judge recognized that this was a stretch—during her initial balancing of the drug-use evidence, she noted that "its probative value may be minimal" (R. 115), and later she characterized it as showing "that the money *may* have been used for crack cocaine" (R. 164; emphasis added). In this light, one is left wondering how the offered evidence overcame "mere relevance" to be admissible probative evidence for purposes of RCM 1001(b)(4), much less outweighing the potential for unfair prejudice under MRE 403's balancing test. The military judge's failure to adequately address these factual and legal relevance issues, particularly in her MRE 403 balancing analysis, was an abuse of discretion.[7]

## STATEMENTS AGAINST PENAL INTEREST

That conclusion is buttressed when the aggravation evidence is further analyzed under another applicable rule of evidence, MRE 804(b)(3). The recent Supreme Court decision in *Williamson v. U.S.*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), addressed the admissibility of inculpatory statements against penal interest:

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

\* \* \* \* \* \*

Moreover, whether a statement is self-inculpatory or not can only be determined by viewing it in context.... The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest "that a reasonable person in declarant's position would not have made the statement unless believing it to be true," and this question can only be

---

6. The explanations on appellant's use of the misappropriated travel advance were:
   Q. So what did you do with the money?
   A. I spent it.
   \* \* \* \* \* \*
   Q. Then—and on those occasions did you use up all the traveler's checks?
   A. Yes, ma'am.
   R. 47 & 89. It was certainly within the government's ability, either in the stipulation of fact or during the guilty plea inquiry, to establish a better foundation that the money spent in Florida was the stolen funds. The fact that the appellant was in pay grade E–4 and had a history of unauthorized use of his government credit card to rent vehicles for his personal use does not, in itself, clearly establish this fact.

7. See *U.S. v. Martin*, 20 M.J. 227, 233 (C.M.A. 1985) (Everett, C.J., concurring in the result):

Indeed, from what the military judge said at trial, it appears that he, too, could not detect the relevance of this evidence, so I am not sure of the basis upon which he admitted it. Initially, ..., the judge characterized the passage as "ambiguous".... Later, he questioned the probative value of the statement.... When carefully analyzed, all ... of these observations by the military judge have a common basis: the evidence was not relevant under Mil. R.Evid. 401.

If somehow, the objectionable passage of the confession can be viewed as relevant, all of the factors I have identified compel a conclusion that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Accordingly, even if admissible under Mil.R.Evid. 401 and 404(b), it should have been excluded under Mil.R.Evid. 403.

answered in light of all the surrounding circumstances. [footnote omitted]

512 U.S. at —— – ——, 114 S.Ct. at 2435–37.[8] This decision came down after appellant's court-martial, but before the case was briefed before us. So, it is understandable that the military judge was guided by earlier precedent which allowed entire narratives, involving statements against interest, that were reliable under the circumstances to be introduced. E.g., *U.S. v. Koistinen,* 27 M.J. 279 (C.M.A.1988); see generally 2 Strong ed., McCormick on Evidence § 319 at 345 (4th ed. 1992) ("[T]he trend in the federal cases is to admit the entire statement if the two parts [those inculpating the declarant and the accused] are reasonably closely connected."). However, after *Williamson,* whether or not a statement is truly against interest depends on "a fact-intensive inquiry" of the surrounding circumstances. 512 U.S. at ——, 114 S.Ct. at 2437. In the present case, the trial court did not conduct such an inquiry.

The circumstances under which the declarant's statements were made are sketchy; most of what there is was elicited by the defense. The declarant was interviewed by two Coast Guard special agents in a Florida motel.[9] She was not given Miranda warnings. She was in a "diversion program" which required her to stay away from drugs because of past addiction. After the interview, the special agents notified the local police. At the time of trial, she was incarcerated in Florida "for repeated violation of prostitution". From this, we do not know whether the interview was a custodial situation.[10] And if so, whether the lack of rights warnings would have lead the declarant to believe that her statements could not be used against her.[11] We do not know what the declarant's status was at the time she came to the interview—whether she was free, on bail, released from jail solely for the interview, etc.[12] We do not know whether the

8. Since the military rule is the same as the Federal Rule, the assumption here is that the Supreme Court's interpretation of the Rule is highly persuasive, if not binding, when military practice does not necessitate a different approach. See generally *U.S. v. Dillon,* 18 M.J. 340, 344–45 & n. 3 (C.M.A.1984); cf. *U.S. v. Sutton,* 42 M.J. 355 (1995). The *Williamson* decision was limited to interpreting the Rule:

> In light of this disposition, we need not address Williamson's claim that the statements were also made inadmissible by the Confrontation Clause, see generally *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and in particular we need not decide whether the hearsay exception for declarations against interest is "firmly rooted" for Confrontation Clause purposes. Compare, *e.g., United States v. Seeley,* 892 F.2d 1, 2 (CA1 1989) (holding that the exception is firmly rooted), with *United States v. Flores,* 985 F.2d 770 (CA5 1993) (holding the contrary). We note, however, that the very fact that a statement is genuinely self-inculpatory—which our reading of Rule 804(b)(3) requires—is itself one of the "particularized guarantees of trustworthiness" that makes a statement admissible under the Confrontation Clause. See *Lee v. Illinois,* 476 U.S. 530, 543–545, 106 S.Ct. 2056, 2063–2064, 90 L.Ed.2d 514 (1986). We also need not decide whether, as some Courts of Appeal have held, the second sentence of Rule 804(b)(3)—"A statement tending to expose the declarant to criminal liability *and offered to exculpate the accused* is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement" (emphasis added)—also requires that statements inculpating the ac-

cused be also supported by corroborating circumstances. See, *e.g., United States v. Alvarez,* 584 F.2d 694, 701 (CA5 1978); *United States v. Taggart,* 944 F.2d 837, 840 (CA11 1991).

512 U.S. at ——, 114 S.Ct. at 2437.

9. "In the first place, the pretrial statements were made to criminal investigators—who often 'are not merely observing and evaluating but seeking to build a case to prove guilt.' See *United States v. Cordero,* 22 MJ 216, 223 (CMA 1986)." *U.S. v. Guaglione,* 27 M.J. 268, 274 (C.M.A.1988).

10. "This was not a spontaneous declaration made to friends and confederates, but a custodial confession, given under potentially coercive circumstances that could not at trial—and cannot now—be adequately examined." *U.S. v. Sarmiento–Perez,* 633 F.2d 1092, 1102 (5th Cir. 1980).

11. See *U.S. v. Dillon,* 18 M.J. 340, 344 (C.M.A. 1984) ("[The declarant] himself was probably aware that at the time the naval authorities were not interested in prosecuting him, but only in his rehabilitation; and with such awareness he would have been less likely to believe that the remark [about drugs] to his friend ... during a casual conversation constituted a declaration against his penal interest.").

12. See *U.S. v. Tovar,* 687 F.2d 1210, 1213 (8th Cir.1982) (exculpatory statement properly excluded where declarant knew he was going to prison for an unrelated crime and may have wished to help out a friend). See also *U.S. v. Atkins,* 618 F.2d 366, 372–73 (5th Cir.1980):

declarant was in a position to curry favor by providing information being sought against the defendant.[13] We do not know the particulars about the "diversion program" and whether admitted drug use could have any effect on it. Moreover, the only statements which she made that are facially self-inculpatory are that she used drugs in the company of the defendant and they got to the point that they were consuming between $100–$200 of crack cocaine a day.[14] Her statement that the drugs were only purchased by the defendant was not against her penal interest. On the contrary, it appears that the declarant was making it very clear that her only involvement was simple drug use—a crime sometimes viewed with less opprobrium and consequences in the civilian sector than in the military. It was the defendant who purchased and distributed (to her) the drugs with no other involvement from her. That conclusion is somewhat suspect—that the resident declarant would not be involved at all with the newcomer defendant's efforts to procure drugs in the local area. All in all, the declarant completely downplayed her involvement by suggesting that the defendant was the more culpable party with respect to the drugs.[15] Because of the dearth of surrounding circumstances, placing the declarant's statements in context, there is insufficient assurances that her statements were truly against her penal interest within the meaning of MRE 804(b)(3). This is particularly true with respect to those statements on who bought and paid for the drugs, and they should not have been admitted. Without the evidence on who bought and paid for the drugs, the relation to the defendant's theft crime is lost because the defendant's alleged drug use cannot be directly linked to his conviction for converting to his own use a $4800 travel advance from the government. Consequently, the uncharged drug use was not "aggravating circumstances directly relating to or resulting from" the appellant's theft offense within the meaning of RCM 1001(b)(4). The military judge abused her discretion in admitting it under MREs 804(b)(3) and 403 and considering it under RCM 1001(b)(4).

## PREJUDICIAL OR HARMLESS ERROR

■ The finding of error, however, does not end the inquiry. The error must be prejudicial under Article 59(a), UCMJ, to

After the first trial, in which [the declarant/co-conspirator] was convicted and sentenced to 43 years, and before [the defendant's] second trial began, [the declarant] agreed to testify for the government in exchange for a reduction of his sentence to ten years. [The declarant] wrote all of the letters [exculpating the defendant] after his conviction, one eight days before his sentenced was reduced, when it may be assumed that he was contemplating making a pact with the government to lessen his sentence, and two others after sentencing. Therefore, [the declarant's] penal interest was no longer at stake when the letters were written, and they did not derive reliability from tending to be against his penal interests. See *United States v. Gonzalez, 559 F.2d 1271, 1273 (5th Cir.1977)* (statement after conviction immunity not against penal interests).

13. "[The declarant] had an obvious incentive to spread blame and curry favor with the authorities by implicating the defendants." *U.S. v. Costa,* 31 F.3d 1073, 1079 (11th Cir.1994). See also *U.S. v. Greer,* 33 M.J. 426, 430 (C.M.A.1991) ("might forestall a prosecution"); *U.S. v. Wind,* 28 M.J. 381, 384 (C.M.A.1989) ("[T]he declarant often expects that, by making such a statement [which acknowledges the declarant's criminal liability but which makes the other co-accused seem much more culpable], he will be able to obtain dismissal of the charge, a favorable plea bargain, or some other benefit.").

14. "The unreliability of the accusations of an erstwhile accomplice is well known. Cf. *Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); United States v. Dill, 24 M.J. 386, 387–88 (CMA 1987)." U.S. v. Greer,* 33 M.J. 426, 430 (C.M.A.1991).

15. "[T]he statement itself would be viewed as 'presumptively unreliable' due to its blame-spreading content. E.g., *Lee v. Illinois, 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986); United States v. Dill, 24 M.J. 386 (CMA 1987)." U.S. v. Yeauger,* 27 M.J. 199, 202 (C.M.A.1988). See also *U.S. v. Sanchez,* 26 M.J. 564, 565–66 (C.G.C.M.R.1988) ("The evidence in question, which casts appellant in a light more unfavorable than the declarant, was neither contrary to declarant's interest in its thrust nor was it supported by other circumstances that would indicate its trustworthiness."); *U.S. v. Hazelett,* 32 F.3d 1313, 1318 (8th Cir.1994) ("Once the drugs were discovered, for all practical purposes [the declarant's] conviction was assured. Consequently, she had nothing to lose by implicating another person, particularly someone more culpable.").

warrant further relief. The admission of uncharged misconduct during sentencing is not per se prejudicial. See *Williamson v. U.S.,* 512 U.S. 594, ——, 114 S.Ct. 2431, 2440, 129 L.Ed.2d 476 (1994) (Ginsburg, J., concurring) ("I ... cannot say the Government should be denied an opportunity to argue that the erroneous admission of the hearsay statements, in light of the other evidence introduced at trial, constituted harmless error."); *U.S. v. Wind,* 28 M.J. 381, 385 (C.M.A.1989) ("Under the circumstances, we believe it appropriate for the judges of the Court of Military Review to express their views as to whether admission of [the declarant's hearsay] statement in evidence [on the merits] was harmless beyond a reasonable doubt."). The appellant admitted guilt in a judge-alone trial to unauthorized absence, wrongful appropriation of a vehicle, the theft of $4800 from the government, and eight obtaining services (i.e., vehicle rentals) by false pretenses. The military judge recognized the tenuousness of the drug use as aggravation with respect to the theft offense, and she noted that she was capable of considering it in that light without giving it undue weight. She also specifically limited her consideration of that evidence to the extent that it tended to show that the stolen funds were "used for illegal purposes as opposed to laudable purposes." Even in the absence of such aggravation, the lack of evidence on the disposition of stolen funds could leave the factfinder with the impression that the money was not used for something that could be considered laudable. Cf. *U.S. v. Martinsmith,* 41 M.J. 343 (1995) (harmless error under the circumstances not to allow the defendant to answer a member's question during sentencing instructions on the whereabouts of the stolen money). Moreover, this aggravation evidence was not highly inflammatory under the circumstances.[16] The uncharged misconduct was also not patently more egregious than the convicted offenses.[17] And, the military judge did not overemphasize the importance of the evidence.[18] Therefore, I am convinced in this case that the military judge's consideration of drug-use evidence during sentencing as indicating that the stolen funds were not used for a laudable purpose was harmless error. See *U.S. v. Wind,* 28 M.J. 381 (C.M.A.1989). As to the remaining assignments of error, I agree with the Chief Judge. Accordingly, the findings and sentence should be approved.

FEARNOW, Judge, concurring in part and in the result:

I concur in Chief Judge Baum's opinion except for Part I and his finding that there was prejudicial error bearing on the sentence. Although I agree that admitting the proffered hearsay statement concerning the defendant's purchase and use of cocaine was most likely an abuse of discretion, I base this opinion on the rationale set forth by Judge O'Hara: that the evidence did not satisfy the relevancy test for aggravation evidence set forth in *United States v. Martin,* 20 M.J. 227 (C.M.A.1985), and *United States v. Rust,* 41 M.J. 472 (1995). I also believe that any error in admitting the hearsay statements was harmless and the findings and sentence should be approved.

16. Compare *U.S. v. Rust,* 41 M.J. 472, 478 (1995) (indicating that defendant's dereliction caused three deaths); *U.S. v. Zakaria,* 38 M.J. 280, 283 (C.M.A.1993) ("explosive evidence of sexual perversion"); *U.S. v. Wingart,* 27 M.J. 128, 134 (C.M.A.1988) (the military judge had observed that "the photographs [indicating the uncharged misconduct] demonstrate that the accused has a sexual appetite for children.").

17. Compare *U.S. v. Zakaria, supra* note 16 ("[I]t is difficult to imagine more damaging sentencing evidence to a soon-to-be sentenced thief than also branding him as a sexual deviant or molester of teenage girls."); *U.S. v. Bono,* 26 M.J. 240, 242 (C.M.A.1988) (The crimes were "considerably more heinous than those offenses before the court."); *U.S. v. Kinman,* 25 M.J. 99 (C.M.A.

1987) ("The Court of Military Review held that, because the uncharged allegations [of sexual misconduct] were 'so repugnant' and 'so much more reprehensible than the acts charged that the danger the accused would be sentenced [by the military judge] for the acts not charged was overwhelming.'"); *U.S. v. Zengel,* 32 M.J. 642 (C.G.C.M.R.1991) (civil arrest for arson in a one-specification drug-use case); *U.S. v. Hall,* 29 M.J. 786 (A.C.M.R.1989) (the uncharged drug offenses were more aggravated than the charged drug offenses).

18. Compare *U.S. v. Wingart, supra* note 16; *U.S. v. Miller,* 23 M.J. 837, 839 (C.G.C.M.R.1987) ("The judge explicitly stated that the answer to his improper question would 'weigh heavily' with respect to sentencing.").

Judge O'Hara also provides a very insightful analysis under MRE 804(b)(3) to determine whether the hearsay statement is truly a statement against the out-of-court declarant's penal interest. While such analysis is indeed helpful in determining the issue of relevancy, I question whether MRE 804(b)(3) has any independent application to the admissability of aggravation evidence in the sentencing phase of a court-martial. It appears that RCM 1001(a)(4), Evidence in aggravation, and RCM 1001(e), Production of witnesses, may exhaust the pertinent rules for determining the availability of witnesses and use of out-of-court statements for aggravation purposes.

Assuming, *arguendo*, that MRE 804(b)(3) does apply to the admission of aggravation evidence, I do not agree with the Chief Judge's conclusion that an attempt to obtain a deposition from the unavailable declarant is required before admitting a statement that, in all other respects, meets the requirements of the rule. Notwithstanding the views of the commentators cited by the Chief Judge, such a requirement has never been applied in military courts and certainly not to the sentencing portion of a trial. In *United States v. Sutton*, 42 M.J. 355 (1995), the majority declined to adopt such a rule even in the case of a statement introduced on the merits. While I can envision some circumstances where the constitutional right to confrontation under the Sixth Amendment, if not MRE 804(b)(3), may require an effort to depose an unavailable declarant before admitting a hearsay statement on the merits, I do not believe any such requirement exists in the context of the sentencing proceedings we are addressing in this case.